Rena FALIK, Plaintiff-Appellee,

v.

The UNITED STATES of America,
Defendant-Appellant.

No. 368, Docket 29396.

United States Court of Appeals
Second Circuit.

Argued Feb. 19, 1965.

Decided March 18, 1965.

Joseph Kovner, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, George F. Lynch, Washington, D. C., Joseph P. Hoey, U. S. Atty., George L. Barnett, Asst. U. S. Atty., of counsel), for defendant-appellant.

Robert E. Scher, New York City, (Raphael, Searles & Vischi, New York City, Sidney O. Raphael, New York City, of counsel), for plaintiff-appellee.

Before WATERMAN, FRIENDLY and HAYS, Circuit Judges.

FRIENDLY, Circuit Judge.

■ Mrs. Falik brought this action in April, 1962, in the District Court for the Eastern District of New York to remove a tax lien of the United States as a cloud on the title to her home at Woodmere, Long Island. The lien was for withholding and social security taxes due from two corporations, of which the Commissioner of Internal Revenue had found her to have been a responsible officer, see Internal Revenue Code of 1954, §§ 3102, 3403, 6672;[1] Mrs. Falik alleged that this finding was erroneous. The United States made a motion to dismiss for want of jurisdiction, amplified by an accompanying affidavit which spoke of sovereign immunity and the bar against injunctive or declaratory tax relief; Judge Dooling denied the motion, 206 F.Supp. 181 (1962). Two and a half years later the Government made a second motion to dismiss for want of jurisdiction or other appropriate relief, citing decisions in other districts contrary to Judge Dooling's; the motion contained a request that, in the event of denial, the judge should grant a certificate for an interlocutory appeal under 28 U.S.C. § 1292(b). Judge Dooling denied the motion but granted the certificate. Recognizing that the issue was one of importance in the administration of the revenue laws, on which district courts have differed; that this difference was due in some measure to our having accepted an argument of the Government in Pipola v. Chicco, 274 F.2d 909 (2 Cir. 1960), which, at the Government's urging, we branded as erroneous in United States v. O'Connor, 291 F.2d 520 (2 Cir. 1961); that failure to allow an interlocutory appeal followed by a victory by the Government on the merits might

---

1. All section references are to the Internal Revenue Code of 1954 save as otherwise stated.

moot the issue that we ought to determine; and that a reversal would "materially advance the ultimate termination of the litigation," we granted leave for an interlocutory appeal.

 The district court had subject-matter jurisdiction over the action as one "arising under any Act of Congress providing for internal revenue * * *." 28 U.S.C. § 1340. While 28 U.S.C. § 2410(a) does not create a new "federal" claim, contrast § 7424, the present suit nevertheless does "arise under" the revenue laws because Mrs. Falik's liability as a responsible officer depends directly on the "construction or effect" of certain of those laws. United States v. Coson, 286 F.2d 453, 456–458 (9 Cir. 1961); contrast Remis v. United States, 273 F.2d 293 (1 Cir. 1960). However, 28 U.S.C. § 1340 alone would not enable the plaintiff to surmount the bars created by sovereign immunity and by the historic prohibitions against injunctions or declaratory relief in federal tax matters, § 7421, 28 U.S.C. § 2201. For this purpose she relies upon 28 U.S.C. § 2410(a), by which the United States consents to "be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter, to quiet title to or for the foreclosure of a mortgage or other lien upon real or personal property on which the United States has or claims a mortgage or other lien." [2] The lien is obviously a "cloud" on the title and on a literal reading of the section it is difficult to see why the district court could not grant Mrs. Falik the relief she asks. But the Government urges with force that such adherence to the letter is forbidden by considerations of history and policy, and we are persuaded that the present action is not one contemplated by 28 U.S.C. § 2410(a), and cannot be entertained on any other ground.

We do not consider either of our cited decisions to be dispositive. Pipola v. Chicco, supra, was a state court action by purchasers of real estate who, because of error by a title searcher, had failed to receive notice of a duly filed United States tax lien; the United States removed and counterclaimed for foreclosure of the lien, under what is now § 7403, which the district court granted. The case came to us on the assumption, not seriously contested by the Government, 274 F.2d at 911, that in a formal sense the action initiated by the Pipolas was within 28 U.S.C. § 2410(a). The issue, see fn. 3 on that page, was "[t]he scope of the inquiry into the validity of tax liens permitted" under the circumstances. The Government argued that the validity of the assessment could not be examined because (1) this could not be done even in a suit by it to enforce a lien against a taxpayer under what is now § 7403, (2) the taxpayer ought stand no better in a suit initiated by him under 28 U.S.C. § 2410(a), and (3) it could not have been intended that a third person should stand better than the taxpayer under either section. Although expressing surprise at the lack of decisions to support the first proposition, 274 F.2d at 912, we adopted it on the basis of a dictum in Bull v. United States, 295 U.S. 247, 259–261, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), of our unwarranted confidence in the Government's presentation on a matter of tax administration, and of the lack of citation of contrary authority. Once that proposition was accepted, the others seemed to follow. Later, in United States v. O'Connor, supra, a suit under § 7403 to enforce a lien against the taxpayer, the United States urged that the first proposition of its argument in Pipola was in error, as the authorities and the history unearthed by its research demonstrated. Overruling what we had said in Pipola on that score, we declined to pass, one way or the other, on the Government's contention that the actual decision in that case was nevertheless correct "because of asserted differences between the rights of the taxpayer and of a third person," 291 F.2d at 526, to challenge the validity of the assessment when a lien based there-

---

2. 28 U.S.C. § 1444 authorizes removal of any such action brought in a state court.

on is being foreclosed.[3] These asserted differences—on which we need not here pass—cannot help the Government in the present action, brought by the taxpayer and not by a transferee.

The statute on which the plaintiff relies, enacted in 1931, 46 Stat. 1528, had initially given consent of the United States only in any action "for the foreclosure of a mortgage or other lien upon real estate * * *." The words "to quiet title to" were added in 1942, when the statute was being broadened to include personal property, 56 Stat. 1026. The addition resulted from a request of Attorney General, later Mr. Justice, Jackson; he explained the reason as indicated in the margin.[4]

It is plain that a taxpayer whose property has been subjected to a federal tax lien does not come within the Attorney General's examples of intended plaintiffs, although the Pipolas did. Still, the plaintiff here may argue that we must take the words that Congress used in 1942 rather than the draftsman's illustrations —a position to which, ironically, no one has ever spoken more persuasively than did this very draftsman after he had assumed another role.[5] By the same token, says the plaintiff, since the statute does not restrict the grounds on which title may be "quieted," the courts should impose none.

The argument might have merit if the 1942 enactment had been an independent piece of legislation. But it was not; it was an amendment, represented as a rather inconsequential one, to the 1931 statute. And we conclude that under the 1931 statute a junior lienor could not have questioned the essential validity of an assessment underlying a senior Government tax lien.

It would be unlikely in the last degree that by an amendment to the Judicial Code, relating to all mortgage or lien claims of the United States, the 1931 Congress meant to give private mortgagees or lienors a right to take the initiative in an attack on the validity of tax assessments, which the taxpayer himself had never had and was not then given. As we showed in Pipola, 274 F.2d at 912–913, the statute would serve many purposes without construing it so broadly.[6] Undoubtedly the prime purpose of § 2410(a) as enacted in 1931, and the only one provided in the House Bill, H.R. Rep. No. 95, 71st Cong., 2d Sess. 1–2 (1929), was to permit joinder when the lien of the United States was junior to

---

3. If Pipola had involved only the plaintiffs' claim, the result could be defended on the additional ground, here adopted, that 28 U.S.C. § 2410(a) does not allow initiation of a suit on the merits of the assessment, regardless of defenses available when the Government sues under § 7403. But this argument would not cover the Government's counterclaim in Pipola under § 7403 to foreclose the lien.

4. "It should be observed in this connection that under existing law there is no provision whereby the owner of real estate may clear his title to such real estate of the cloud of a Government mortgage or lien. Welch v. Hamilton (S.D.Calif.), 33 F.2d 224, and United States v. Turner (C.C.A. 8), 47 F.2d 86.

"In many instances persons acting in good faith have purchased real estate without knowledge of the Government lien or in the belief that the lien had been extinguished. In other instances, mortgagees have foreclosed on property and have failed to join the United States. It appears that justice and fair dealing would require that a method be provided to clear real-estate titles of questionable or valueless Government liens. Accordingly, I suggest that the bill be amended by inserting the phrase 'to quiet title or' between the words 'matter' and 'for the foreclosure of' in line 4 of page 2 of the bill." H.R.Rep. No. 1191, 77th Cong., 1st Sess. 2 (1941) ; S.Rep. No. 1646, 77th Cong., 2d Sess. 2 (1942).

5. See concurring opinions of Mr. Justice Jackson in Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 395, 71 S. Ct. 745, 95 L.Ed. 1035 (1951) and United States v. Public Utils. Comm'n, 345 U.S. 295, 319–321, 73 S.Ct. 706, 97 L.Ed. 1020 (1953).

6. See also the extracts from the legislative history in United States v. Brosnan, 363 U.S. 237, 247 n. 11, 80 S.Ct. 1108, 4 L. Ed.2d 1192 (1960).

that being foreclosed; in such cases the validity of the Government lien would generally be irrelevant. When the suit was brought by a junior lienor, the statute concededly permitted inquiry into the validity of the lien itself, as distinct from the underlying assessment, through attacks on procedural irregularity, see United States v. Coson, supra, 286 F.2d at 463, on liens filed against property of a person other than the one against whom the tax had been assessed,[7] on Government liens asserted to be prior but contended not to be, and on liens which had in fact been eliminated but not discharged of record.[8] But we cannot take the general language of the 1931 amendment to the Judicial Code concerning Government liens of every kind as intended to overturn, in favor of persons holding liens on the property of taxpayers, the longstanding principle that, except as provided in § 6213 with respect to review of determinations of deficiencies in income, gift and estate tax by the Tax Court, a person whose sole claim is that a federal tax assessment was not well grounded in fact and law must "pay first and litigate later." Flora v. United States, 362 U.S. 145, 164, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960); Comment, 71 Yale L.J. 1329, 1339–41 (1962).[9]

If no such breach in the wall was effected in 1931 in favor of lienors of real property, it would strain credulity to suppose that, by adopting what was represented as a rather unimportant amendment in 1942, Congress meant to open a much larger breach in favor of all taxpayers owning property, real or personal When the Attorney General spoke of "questionable or valueless Government liens," see fn. 4, he was speaking of liens voidable on grounds such as we have

suggested—not of cases where the only "question" was whether the Commissioner had erred, in fact or in law, in making the underlying assessment. Congress "did not inadvertently add a colonial wing to a gothic cathedral," ICC v. J-T Transport Co., 368 U.S. 81, 115, 82 S.Ct. 204, 227, 7 L.Ed.2d 147 (1961) (dissenting opinion of Mr. Justice Frankfurter).

■ Plaintiff argues that an action to quiet title is not a suit for an injunction and, more particularly, not a suit "for the purpose of restraining the assessment or collection of any tax," which § 7421(a) alone forbids. Literally that is so, and it is true that an action like the present, where the lien remains of record until and unless a court determines the underlying assessment to be invalid, is less dangerous to the revenue than one in which a taxpayer obtains an injunction against assessment or collection and is free to dispose of his property while the suit goes on. But the action is quite similar to that contemplated by the Declaratory Judgment Act, 28 U.S.C. § 2201, to which Congress was quick to attach an exception "with respect to Federal taxes"—explaining that application of a declaratory judgment procedure in federal tax matters "would constitute a radical departure from the long-continued policy of Congress * *." S.Rep. No. 1240, 74th Cong., 1st Sess. 11 (1935). Plaintiff contends also that since the lien could not be foreclosed without exposing the underlying assessment to scrutiny, United States v. O'Connor, supra, 291 F.2d at 526–28, there is no significant interference with "collection" by allowing the taxpayer to take the initiative in making the challenge. But this overlooks the force of the lien in inducing payment of the tax without

---

7. As the Government points out, Coson could well have been decided on that ground.

8. Some other possibilities are suggested in United States v. Morrison, 247 F.2d 285, 290 (5 Cir. 1957).

9. Although it may not be clear that the transferee or mortgagee of a taxpayer

can pay and litigate, see Pipola, 274 F.2d at 914, or can defend on the merits under § 7403, see O'Connor, 291 F.2d at 526 & n. 3, there is no reason to think that Congress was conscious of this problem and therefore meant to give mortgagees a new remedy with respect to assessments underlying tax liens by amending the Judicial Code in 1931.

judicial proceedings, thereby putting on the taxpayer the same burden of initiating a refund action under 28 U.S.C. §§ 1346(a) (1) or 1491 as if the Government had collected by levy and distraint, §§ 6331–44, with the Government in the meanwhile having the money it deems its due—as well as the possible effect of a quiet title action on the distraint procedure itself. See Comment, supra, 71 Yale L.J. at 1339. Finally, plaintiff says her case comes within the judicially created exception to the anti-injunction statute for instances where "it is clear that under no circumstances could the Government ultimately prevail," and "equity jurisdiction otherwise exists." See Enochs v. Williams Packing & Nav. Co., 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962); Botta v. Scanlon, 314 F.2d 392 (2 Cir. 1963). But the complaint contains no adequate allegations to that end and, apart from other obstacles, including the formidable one that payment of the amount claimed to be due for one employee will afford basis for a refund suit which will then be *res judicata* as to the whole assessment, any action for an injunction would have to be brought against the District Director rather than the United States, which has not consented thus to be sued.

Most of the district courts that have recently had occasion to consider the issue here presented, have reached a conclusion contrary to that under review. Batts v. United States, 228 F.Supp. 272 (E.D.N.C.1964); Quinn v. Hook, 231 F.Supp. 718 (E.D.Pa.1964); Broadwell v. United States, 234 F.Supp. 17 (E.D. N.C.1964); Cooper Agency, Inc. v. Mc-Leod, 235 F.Supp. 276 (E.D.S.C.1964). Since the argument before us, one of these decisions, Quinn v. Hook, has been affirmed by the 3d Circuit, per curiam, 341 F.2d 920 (1965). Sonitz v. United States, 221 F.Supp. 762 (D.N.J.1963), is the only decision in accord, and this could no longer be followed by the court that made it. Recognizing the issue to be debatable, we think the former decisions are weightier not merely in number but in reason.

The order denying the Government's motion is reversed, with instructions to dismiss the complaint for failure to state a claim on which relief can be granted.