**VIVA LTD., a Caymanian corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 79–C–1701.

United States District Court, D. Colorado.

June 6, 1980.

Stanton Rosenbaum, Isaacson, Rosenbaum, Spiegleman & Friedman, Denver, Colo., Leslie J. Barnett, Barnett & Bolt, Tampa, Fla., for plaintiff.

Jeffrey A. King, Dept. of Justice, Trial Attorney, Tax Div., Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

The defendant United States has moved to dismiss the complaint on the grounds that this Court does not have subject matter jurisdiction and that the plaintiff, Viva Ltd., does not have the capacity to bring this action. For the reasons stated in this Memorandum Opinion and Order, the motion is denied.

On September 20, 1979, the Internal Revenue Service imposed certain tax assessments against one Tony Darwin, an individual taxpayer.[1] On September 24, 1979, the IRS filed a Notice of Federal Tax Lien against Darwin in Eagle County, and with respect to the same assessments against Darwin, the IRS also filed a Notice of Federal Tax Lien which named as the taxpayer "Viva Limited as nominee, transferee of [sic] agent of Tony Darwin."[2]

---

1. The assessments imposed were a jeopardy tax assessment for the period ending December 31, 1978 (see 26 U.S.C. section 6861) and a termination assessment for the period from January 1, 1979 through September 14, 1979 (see 26 U.S.C. section 6851).

2. The Notice states, *inter alia*:

"As provided by sections 6321, 6322 and 6323 of the Internal Revenue Code, notice is given that taxes (including interest and penalties) have been assessed against the following-named taxpayer. Demand for payment of this liability has been made, but it remains unpaid. Therefore, there is a lien in favor of

On December 13, 1979, Viva Ltd. filed this action seeking to quiet title to the Eagle County property against which the foregoing lien had been imposed, and seeking to have the lien declared invalid. As grounds for the relief sought, the complaint alleges that the plaintiff, not Tony Darwin, is the owner of the real property described in the notice of lien, and then continues:

"8. Said lien was arbitrarily and capriciously imposed by reason of the following facts:

a) No assessment upon which said lien was based was ever made against Plaintiff;

b) No notice or demand for payment had been served upon Plaintiff at the time of the commencement of this action;

c) No notice of assessment had ever been furnished to Plaintiff as required by law."

The complaint alleges that jurisdiction is founded on 28 U.S.C. sections 1340 and 2410. The United States contends that this Court does not have jurisdiction under those or any other provisions, and therefore that the action should be dismissed. Alternatively, the government argues that the plaintiff has not qualified to do business under Colorado law, and therefore has no capacity to bring this action because of the provisions of section 7–9–103, C.R.S.1973.

### I. "Jurisdictional" Arguments.

The United States correctly points out that 28 U.S.C. section 2410 waives sovereign immunity for the classes of cases within its scope, but does not grant jurisdiction. *E.g., Hudson County Board of Chosen Freeholders v. Morales,* 581 F.2d 379, 382–83 (3rd

the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

\* \* \* \* \* \*

"This Notice of Lien is filed for the purpose of giving public notice that the United States has lien rights against any right, title or interest that Viva Limited may have or acquire in property described as: Lots 15 & 16 of Potatoe Patch Filing, County of Eagle, State of Colorado."

Cir.1978); *Falik v. United States,* 343 F.2d 38, 40 (2d Cir.1965). On the other hand, 28 U.S.C. section 1340 grants jurisdiction to the district courts in certain cases, but does not waive sovereign immunity. *Id.,* 343 F.2d at 40. Thus, for this action to proceed, it must appear that it falls within both sections. *Id.*

### A. Jurisdiction: 28 U.S.C. section 1340.

Section 1340 provides that the district courts "shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue . . . ." The United States concedes that section 1340 "has been found to be a basis for subject matter jurisdiction where the issue concerns the *validity or priority* of the [federal tax] liens, *E.g. Benson v. United States,* 442 F.2d 1221, 1223 (C.A.D.C. 1971)." (Memorandum in Support of Motion to Dismiss, at 4; emphasis added). *See also Aqua Bar & Lounge, Inc. v. United States,* 539 F.2d 935, 937 (3rd Cir.1976) ("Clearly, a suit which contests the validity of a federal tax lien and sale falls within [section 1340's] terms"); *United States v. Coson,* 286 F.2d 453, 455–56 (9th Cir.1961).

The United States argues, however, that "the issue in this case involves the ownership of certain property, and therefore this action does not arise under any internal revenue law since state law determines the nature and extent of plaintiff's and Mr. Darwin's interests in property to which the lien can attach." (Memorandum in Support of Motion to Dismiss, at 3.) In other words, the essence of the government's position is that resolution of state law questions alone will dispose of the case, and therefore the action should have been filed in state court.[3]

3. Counsel for the United States acknowledged, at oral argument, that if this action is dismissed here and refiled in state court, the government may exercise its right to remove the case from state court back to federal court. *See* 28 U.S.C. section 1444. The government's position here—asserting that it is entitled to dismissal but admitting its possible intention to remove the case to this Court if it is refiled in state court—appears to be economically and

The government's position is only partially correct. The amount of a delinquent taxpayer's liability gives rise to "a lien in favor of the United States upon *all property, whether real or personal, belonging to such person.*" 26 U.S.C. section 6321. (Emphasis added.) Thus, state law defines the taxpayer's property interests to which a tax lien can attach:

> "The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that 'in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property . . . sought to be reached by the statute.'" *Aquilino v. United States*, 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365, 1368 (1960).

*See also United States v. Durham Lumber Company*, 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960); *United States v. Overman*, 424 F.2d 1142, 1144 (9th Cir.1970).

This approach to the question has obvious logic, for the threshold state law determination may dispose of the case. "[A] federal tax lien can only attach to a property interest of the taxpayer which exists under state law, and if the taxpayer does not own the property or have rights to the property under state law, then the federal tax lien could not attach to such property. . . ." *Atlas, Inc. v. United States*, 459 F.Supp. 1000, 1004 (D.N.D., S.W.D.1978).

■ That does not mean, however, that the existence of a property interest is determinative, in and of itself, of the question whether the tax lien has validly attached.

"[O]nce it has been determined under state law that the taxpayer owns property or rights to property, federal law is controlling for the purpose of determining whether a lien will attach to such property or rights to property." *Broday v. United States*, 455 F.2d 1097, 1099 (5th Cir.1972). *See also United States v. Bess*, 357 U.S. 51, 56–57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135, 1141 (1958). Therefore, even where it has been determined that a taxpayer owns property to which a lien can attach, it remains to be determined, when the issues are raised, whether the government has complied with the necessary notice and other procedural requirements. *See, e.g., Bauer v. Foley*, 408 F.2d 1331, 1333 (2d Cir.1969) ("The consequence of such a defect in the notice [required by 26 U.S.C. section 6303], in the absence of proof by the Government of actual notice and demand prior to filing a lien, was that it invalidated the lien subsequently filed.")

In this case, the first question regarding the relative property interests of the plaintiff and Tony Darwin will be resolved according to state law principles. Indeed, if that inquiry determines that the plaintiff is *not* Darwin's alter ego, then the matter would need to proceed no further. If Darwin, the taxpayer, has no interest in the property described in the notice of lien, then no lien for his taxes could validly attach to that property.

■ If, on the other hand, the court were to find that Darwin does have an interest in the subject property, the questions raised in the complaint regarding the government's compliance with federal notice and demand requirements would need to be answered. It is because of this latter contingency that this is an action "arising under" the internal revenue laws.[4] In other words, al-

---

practically unjustifiable if not downright irresponsible. Nonetheless, the ability to take this unjustifiable position is a matter of right for the government, and, therefore, its motion must be decided on its merits.

4. The government intimates that if the plaintiff is found to be Darwin's alter ego, then, as a matter of law, the notice and demand *must*

have been proper, since there was no entity separate from Darwin on which separate demand and notice would have been required. That argument addresses the merits of the federal questions raised by the complaint, however, and really begs the jurisdictional issues raised by the motion to dismiss. Regardless of

though state law will determine whether there is "property" to which a federal tax lien could attach, federal law must determine whether, *given that property interest,* a valid lien was perfected against it.

Although not exactly on point factually, *United States v. Coson,* 286 F.2d 453 (9th Cir.1961), supports this conclusion. That case raised a question whether notices and demands on two general partners were sufficient to constitute notice and demand on the plaintiff, who contended that he was not a general partner and therefore his personal property was not subject to the government's lien for the partnership's taxes. Although it was necessary to decide an underlying question dependent upon the state law governing partnerships, the court recognized that there were also federal questions which supported jurisdiction under section 1340:

> "We inquire next whether this is an action 'arising under' any Act 'providing for internal revenue' within the meaning of § 1340. Insofar as the plaintiff's lien is based upon an assertion that the Government's lien is void and ineffective because of a failure to make demand upon the plaintiff, . . . it must be said that the suit 'really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends.'
>
> "Plainly enough as concerns his contention that the lien claimed by the United States is void because of want of prior demand, plaintiff undertook to bring a suit the result of which depends upon the meaning of Title 26 U.S.C. § 6321 which provides for a lien in favor of the United States against the property of a person liable for a tax who 'neglects or refuses to pay the same *after demand.'* (Emphasis added.) He cites authority to support his claim that the effect of the law was that a lien upon his property was dependent upon a prior demand to him personally. The result so far as that portion of

the case is concerned would turn upon the determination of that question which is one involving the construction or effect of the law." 286 F.2d at 457–58 [footnotes omitted.]

Similarly, in this case, there are both state and federal questions, and determination of the latter, if that becomes necessary, will require application and construction of internal revenue laws. Therefore, jurisdiction is properly invoked under 28 U.S.C. section 1340.

B. *Waiver of Sovereign Immunity: 28 U.S.C. section 2410.*

"[T]he United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter . . . to quiet title to . . . real or personal property on which the United States has or claims a mortgage or other lien." 28 U.S.C. section 2410(a). The federal courts have nearly uniformly held that section 2410 does not permit a taxpayer to challenge the validity of a tax assessment by way of a quiet title action, and thereby subvert the general "pay first, litigate later" policy. *E.g., Mulcahy v. United States,* 388 F.2d 300 (5th Cir.1968); *Falik v. United States,* 343 F.2d 38 (2d Cir.1965).

The cases just cited, however, and the rule they have established, are distinguishable from the instant action:

> "The rationale of *Falik* and similar cases thus has no application where, as here, the taxpayer questions only the validity of the procedures used to enforce a tax lien and not the validity of the tax assessment itself.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> "We therefore hold that § 2410 constitutes a waiver of sovereign immunity to a suit brought by a taxpayer against the United States which challenges the validity of a federal tax lien and sale so long as the taxpayer refrains from contesting the merits of the underlying assessment itself." *Aqua Bar & Lounge, Inc. v.*

the possible outcome on the merits, the question at this point is whether this action "arises

under" the internal revenue laws, and it plainly does.

*United States,* 539 F.2d 935, 939–40 (3rd Cir.1976).

*Accord, Benson v. United States,* 442 F.2d 1221, 1223, n. 3 (D.C.Cir.1971); *Yannicelli v. Nash,* 354 F.Supp. 143, 151 (D.N.J.1973).

In this case, the plaintiff does not challenge the validity of the underlying tax assessment, so the rationale of the "pay first, litigate later" policy is not involved. Moreover, here, as in *Aqua Bar & Lounge, Inc. v. United States,* there are strong policy reasons against denying the plaintiff's right to bring this action:

> "Not only are we unpersuaded by the government's arguments for prohibiting a taxpayer from bringing a properly limited suit against the United States under § 2410, we also find strong policy reasons for permitting such an action. The inviolability of private ownership has long been a fundamental principle of our nation's jurisprudence. *See Thatcher v. Powell,* 6 Wheat. 119, 125, 5 L.Ed. 221 (1821). In recognition of this principle, Congress has imposed precise strictures on the seizure and sale of an individual's property by the IRS to satisfy legitimate tax deficiencies. These provisions, which the plaintiff contends were not complied with in the instant case, are for the obvious protection of the taxpayer faced with the loss of his property. *Reece v. Scoggins,* 506 F.2d 967, 971 (5th Cir.1975). Yet, if § 2410 is construed to lift the barrier of sovereign immunity only to actions brought by parties other than the taxpayer whose property is at stake, the taxpayer would have no available means of enforcing compliance with the procedures enacted for his benefit. In the absence of a Congressional directive to the contrary, we refuse to place such a narrowing construction on § 2410 and thus deprive a taxpayer of any remedy against arbitrary administrative action." 539 F.2d at 939.

■ The reasoning of the *Aqua Bar & Lounge* opinion becomes even more persuasive where, as here, the plaintiff contends not only that the liens were filed in violation of procedural requirements, but

also that it, the plaintiff, is not the taxpayer. Accordingly, the Court holds that sovereign immunity has been waived as to this action by 28 U.S.C. section 2410.

## II. *Plaintiff's Capacity to Sue: Section 7–9–103, C.R.S. 1973.*

■ Finally, in its memorandum in support of the motion to dismiss, which was filed after the hearing on the motion, the United States raises a new issue regarding the plaintiff's capacity to sue. The government's argument is based on section 7–9–103, C.R.S.1973, which provides that "[n]o foreign corporation transacting business in this state without a certificate of authority nor anyone in its behalf shall be permitted to maintain any action, suit, or proceeding in any court of this state until such corporation has obtained a certificate of authority." Apparently the plaintiff concedes that it has not obtained a certificate of authority. Nonetheless, the government's argument fails for several reasons.

First, the United States incorrectly relies on *Woods v. Interstate Realty Co.,* 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1948). In *Woods,* jurisdiction was based on diversity of citizenship, and a foreign corporation attempting to bring suit *on a state law cause of action* was held to be subject to the forum state's requirement that a corporation qualify to do business in the state before it could bring suit. The *Woods* decision was premised "on the theory that a right which the local law creates but which it does not supply with a remedy is no right at all for purposes of enforcement in a federal court in a diversity case; that where in such cases one is barred from recovery in the state court, he should likewise be barred in the federal court." 337 U.S. at 538, 69 S.Ct. at 1237.

However, "where the right asserted is instead federally created, the *Woods* rule does not apply and the [state] statute does not operate to bar such an action. *Angel v. Bullington,* 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *Lyon v. Quality Courts United,* 249

F.2d 790 (6th Cir.1957); 3A Moore, Federal Practice, § 17.21 at 774 (2d ed. 1970)." *Metropolitan Paving Company v. International Union of Operating Engineers*, 439 F.2d 300, 307 (10th Cir.1971), *cert. denied*, 404 U.S. 829, 92 S.Ct. 68, 30 L.Ed.2d 58. Here, although the United States asserts that a quiet title action is *per se* one "arising under Colorado law," it is clear that at least some of the rights asserted are created by federal law. Therefore the Colorado limitation on the right to bring lawsuits does not apply.

Second, section 7–9–103(1) by its terms bars only suits by corporations "transacting business" in Colorado without a certificate of authority. The question whether the plaintiff is transacting business in Colorado for the purposes of this statute involves factual matters,[5] and at this point there is no evidence before the Court showing the nature or scope of the plaintiff's business activities. Therefore it would not be proper to dismiss the action at this time. *Embassy Pictures Corporation v. Hudson*, 226 F.Supp. 421, 424 (W.D.Tenn., W.D.1964).

Third, "a foreign corporation may not be compelled to qualify under these statutes if it is engaged solely in interstate commerce. *Eli Lilly & Co. v. Sav-On-Drugs*, 366 U.S. 276, 278, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961)." *Cement Asbestos Products v. Hartford Accident & Indemnity Company*, 592 F.2d 1144, 1146 (10th Cir.1979). Again, there is no evidence from which the Court can determine whether the plaintiff's business activities are interstate, intrastate, or both, and therefore dismissal at this time would be inappropriate.

The motion to dismiss is DENIED.

*Cement Asbestos Products v. Hartford Accident & Indemnity Company*, 592 F.2d 1144–1147 (10th Cir.1979).

---

5. "It is generally accepted that more activity must be found for imposing a state qualification statute on a foreign corporation than is necessary for taxation or service of process."