**In the ESTATE OF Norman L. JOHNSON, Deceased.**

**Melvin M. ENGEL, Executor of the Estate of Norman L. Johnson, Deceased, Plaintiff–Appellant,**

**v.**

**UNITED STATES of America, Defendant–Appellee.**

No. 86–6026.

United States Court of Appeals, Fifth Circuit.

Feb. 4, 1988.

Rehearing Denied March 2, 1988.

Mark D. Wilson, Engel, Jones & Wilson, Houston, Tex., for plaintiff-appellant.

Henry K. Oncken, U.S. Atty., Houston, Tex., Kenneth W. Rosenberg, Steven Gremminger, Dept. of Justice, Tax Div., Michael L. Paup, Chief, Appellate Section, Roger M. Olsen, Asst. Atty. Gen., William S. Estabrook, Washington, D.C., for defendant-appellee.

Before WISDOM, GEE and KING[*], Circuit Judges.

CAROLYN DINEEN KING, Circuit Judge:

Melvin M. Engel, the executor of the estate of Norman L. Johnson, appeals from the district court's dismissal of his suit to quiet title to property clouded by federal tax liens. The district court dismissed the executor's suit on the ground that the district court lacked subject matter jurisdiction over the dispute, given the United States' failure to waive sovereign immunity in such cases. Finding the district court in error on this point, we reverse and remand.

## I.

The facts of this case are largely undisputed. On February 4, 1983, the United States Internal Revenue Service ("the IRS")[1] issued a jeopardy assessment[2]

---

[*] Formerly Carolyn Dineen Randall.

1. For the balance of this opinion, the IRS will be used to refer collectively to the agency itself, IRS officials and the federal government in so far as they play a part in the instant case. In addition, statutory references to Title 26 of the United States Code will be to the Internal Reve-

2. See note 2 on page 942.

against Norman L. Johnson ("Johnson") in the amount of $7.5 million. The IRS subsequently placed a lien on all of Johnson's assets and seized cash and personal property pursuant to the lien. On April 4, 1983, the IRS issued notices of deficiency for Johnson's taxable years 1975 through 1979. Johnson countered by filing petitions with the Tax Court in July of 1983 to redetermine the deficiencies. Those cases are still pending before the Tax Court.[3] In May of 1983, Johnson brought an action in the United States District Court for the Eastern District of Louisiana to review the jeopardy assessment itself. *See* I.R.C. § 7429. On September 28, 1983, that court ruled that the jeopardy assessment was reasonable.

On July 18, 1985, Johnson committed suicide. Melvin M. Engel ("the executor") was duly appointed as the executor of Johnson's estate on August 6, 1985. A few days later, the executor notified the IRS of Johnson's death, requested an abatement of the jeopardy assessment,[4] and requested release of the seized assets "so that they may be sold and the proceeds applied in accordance with the priorities established

by law."[5] The IRS wrote the executor that it could neither abate the assessment nor release the assets. On September 26, 1985, the executor filed an "Application for Recovery of Property ·or, in the Alternative, to Show Cause" in Probate Court No.· 2, Harris County, Texas. In that application, the executor requested the probate court "to enter an Order requiring the [IRS] to immediately return the property seized ... or, alternatively, to appear before this Court and to show cause, if any, why the [IRS] should not return the seized property." The executor alleged that the IRS' refusal to turn over the property was hindering his efforts to administer the estate. Specifically, the executor complained that he was unable to pay claims against the estate, particularly ·the administrative and funeral expenses incurred, in accordance with his obligations under state and federal law.

On October 25, 1985, the IRS petitioned for removal of the case from the probate court to the United States District Court for the Southern District of Texas. The petition was granted[6] and on November 4,

---

nue Code of 1954 ("the Code"), as in effect at the time of assessment. The Code has since been renamed the Internal Revenue Code of 1986. *See* Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085, Sec. 2.

2. When the IRS determines that a tax return as filed fails to reflect the correct tax liability or that a required return has not been filed, it computes an additional tax liability known as a deficiency. *See* I.R.C. § 6211(a). If the IRS determines that the assessment or collection of a deficiency will be jeopardized by the delay inherent in normal collection procedures, *see, e.g.,* I.R.C. §§ 6212–13, 6215, it may immediately assess the deficiency by means of a jeopardy assessment. I.R.C. § 6861(a). The jeopardy assessment entitles the IRS to make notice and demand for immediate payment. *Id.* If the taxpayer fails to pay the assessed tax after demand, "the amount shall be a lien in favor of the United States upon all property and rights to property ... belonging to such person." I.R.C. § 6321. The IRS may collect the tax by levy as well. I.R.C. § 6331.

3. In the jeopardy assessment context, once a taxpayer timely files a petition to redetermine the deficiency with the Tax Court, *see* I.R.C. § 6213, the seized property may not, except in special circumstances, be sold until the Tax

Court makes a final decision. *See* I.R.C. §§ 6215, 6863(b)(3), 7481.

4. "The Secretary or his delegate may abate the jeopardy assessment if he finds that jeopardy does not exist." I.R.C. § 6862(g). The executor argued that since any jeopardy which might have existed while Johnson was alive no longer existed, an abatement of the jeopardy assessment was proper.

5. The executor stressed that it was his duty "to take possession of all assets belonging to decedent, pay all just debts in accordance with priorities established by law, and to distribute any assets left to those who are entitled under the terms of the Will to have them."

6. The IRS petition contended that removal was justified under 28 U.S.C. §§ 1441–42 and 1446. The executor, however, maintains that removal was proper solely under the aegis of 28 U.S.C. § 1444. Section 1444 provides that "[a]ny action brought under section 2410 of this title against the United States in any State court may be removed by the United States to the district court of the United States for the district and division in which the action is pending." Neither party disputes the fact that removal was proper and, while it is unclear precisely which

1985, the district court remanded to the probate court all matters pending before the probate court prior to removal except for "the executor's application for recovery of property or in the alternative, to show cause, which seeks affirmative relief against the United States of America." On November 15, 1985, the IRS filed a motion to dismiss and application for award of attorney's fees. The executor responded on December 9, 1985. The district court held a conference in chambers on February 26, 1986 at which both sides argued their respective positions. The district court granted the IRS' motion to dismiss on November 30, 1986. In its opinion, the district court noted that the IRS' motion to dismiss was based on the contention that the United States had not waived sovereign immunity in this case and that, therefore, the district court was without subject matter jurisdiction. In granting the motion, the district court rejected the executor's argument that 28 U.S.C. § 2410(a)(1)[7] constituted such a waiver of sovereign immunity. The district court concluded that "[t]here are no cases allowing a taxpayer, or his estate, to use § 2410(a)(1) to lift a valid IRS lien so that the taxpayer can use the assets to satisfy other claims or needs of the estate."

The executor timely filed notice of appeal from that judgment. On appeal, we are faced with a single issue: Whether the district court had jurisdiction under the limited waiver of sovereign immunity in 28 U.S.C. § 2410(a) to hear a claim by the executor of a taxpayer's estate seeking to "quiet title" to property subject to federal tax liens.

## II.

"It long has been established, of course, that the United States, as sovereign, 'is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)). Waivers of sovereign immunity must be narrowly read, *Garcia v. United States*, 776 F.2d 116, 118 (5th Cir.1985), and, in construing such waivers, we are not at liberty to extend or narrow the waiver beyond what Congress intended, *Houston v. United States Postal Service*, 823 F.2d 896, 898 (5th Cir.1987).

Under section 2410 as originally enacted in 1931,[8] the government consented to be made a defendant in suits "for the foreclosure of a mortgage or other lien upon real estate, for the purpose of securing an adjudication touching any mortgage or other lien the United States may have or claim on the premises involved."[9] The words "to quiet title to" were added in 1942 as part of an amendment primarily intended to broaden the statute to include personal proper-

---

statutory provision the district court relied upon in granting the IRS' petition, we agree that the case was appropriately removed to the district court by virtue of section 1444. *See Falik v. United States*, 343 F.2d 38, 40 n. 2 (2d Cir.1965).

7. 28 U.S.C. § 2410(a)(1) provides that:

    (a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—

    (1) to quiet title to,

    ....

real or personal property on which the United States has or claims a mortgage or other lien.

8. 46 Stat. 1528.

9. As originally proposed by the House Judiciary Committee, section 2410 was available only to third parties with liens superior to the government's interest in real estate. H.R.Rep. No. 2722, 71st Cong., 3d Sess. 3 (1931). In conference, however, the Senate Judiciary Committee prevailed in its position that the statute should be available to junior as well as senior lienors. Comment, *Conclusiveness of the Merits of a Tax Assessment and the Congressional Policy of Summary Tax Collection*, 71 Yale L.J. 1329, 1337 (1962) (cited in *Mulcahy v. United States*, 388 F.2d 300, 302 n. 3 (5th Cir.1968)). The Senate Committee Report stated, in pertinent part:

    The Government ought not to desire to occupy a dog-in-the-manger position with respect to its liens, neither taking steps to enforce them nor permitting others interested to test their validity or priority.

S. Rep. No. 351, 71st Cong., 2d Sess. 2 (1930).

ty.[10] *See Falik v. United States*, 343 F.2d 38, 41 (2nd Cir.1965). The addition of suits to quiet title resulted from a request of Attorney General, later Justice, Jackson in a 1941 letter to the Chairman of the Senate Judiciary Committee.[11] In that letter, Jackson wrote that "justice and fair dealing would require that a method be provided to clear real-estate titles of questionable or valueless government liens." H.R.Rep. No. 1191, 77th Cong., 1st Sess. 2 (1941); S.Rep. No. 1646, 77th Cong., 2d Sess. 2 (1942); *see also United States v. Perry*, 473 F.2d 643, 645 (5th Cir.1973). The amendment "was in response to the recognized need for a way to force disputes over government tax liens to resolution, rather than leaving the United States in complete control of the timing." *Id.; see also United States v. Brosnan*, 363 U.S. 237, 246, 80 S.Ct. 1108, 1114, 4 L.Ed.2d 1192 (1960) ("[The statute's] only apparent purpose is to lift the bar of sovereign immunity which had theretofore been considered to work a particular injustice on private lienors.").

Section 2410(a) has been the subject of lively judicial debate. Much of that debate has centered on the question of whether taxpayers are entitled to bring suit under section 2410(a).[12] Several circuits have held that a taxpayer may use section 2410(a) to contest the procedural regularity of a lien. *Pollack v. United States*, 819 F.2d 144, 145 (6th Cir.1987); *Aqua Bar &*

---

10. 56 Stat. 1026.

11. The letter read, in pertinent part:

   Under existing law the United States has consented to be named a party to suits for the foreclosure of mortgages or other liens on real estate, in order to obtain adjudications concerning any mortgages or liens that the United States may have, or claim, on such

   real estate (U.S.C., title 28, sec. 901).

   The bill under consideration would extend existing law so as to make it applicable to mortgages and liens on personal property as well as to those on real estate. This amendment appears desirable. Many Government agencies, such as the Farm Credit Administration, the Farm Security Administration, and the Federal Housing Administration, hold in the interest of the United States many mortgages and liens on personal property. It would seem that the holder of a mortgage or of a lien on personal property should have the same right to an adjudication concerning any mortgage or lien that the United States may claim on personal property that is accorded to the holder of a mortgage or lien on real estate.

   It should be observed in this connection that under existing law there is no provision whereby the owner of real estate may clear his title to such real estate of the cloud of a Government mortgage or lien. *Welch v. Hamilton* (S.D.Calif.), 33 F. (2d) 224, and *U.S. v. Turner* (C.C.A. 8), 47 F. (2d) 86.

   In many instances persons acting in good faith have purchased real estate without knowledge of the Government lien or in the belief that the lien had been extinguished. In other instances, mortgagees have foreclosed on property and have failed to join the United States. It appears that justice and fair dealing would require that a method be provided to clear real-estate titles of questionable or valueless Government liens. Accordingly, I suggest that the bill be amended by inserting the phrase "to quiet title or" between the words "matter" and "for the foreclosure of" in line 4 of page 2 of the bill.

   H.R.Rep. No. 1191, 77th Cong., 1st Sess. 2 (1941); S.Rep. No. 1646, 77th Cong., 2d Sess. 2 (1942).

12. The legislative history of section 2410 appears to suggest that the statute's framers envisioned the prime beneficiaries of section 2410(a)(1) to be third parties claiming ownership or an interest in the property belonging to the taxpayer. *Brosnan*, 363 U.S. at 247 n. 11, 80 S.Ct. at 1114 n. 11; *Falik*, 343 F.2d at 41–42; *Aqua Bar & Lounge v. United States Dept. of Treasury*, 539 F.2d 935, 938–39 (3d Cir.1976). Several courts have found it to be equally apparent, however, that Congress did not explicitly preclude taxpayer suits under section 2410. *Id.* at 938. The court in *Aqua Bar* noted that while Jackson's letter did not include taxpayers among the prospective plaintiffs authorized to use Section 2410, it was unprepared to construe his brief remarks to exhaust all the possibilities under the broad statutory language. As the *Aqua Bar* court wrote:

   [W]e note that the legislative history surrounding the most recent revision of § 2410, contained in the Federal Tax Lien Act of 1966, makes no mention of any such limitation to third parties although the history of certain other provisions of that Act specifically limit their applicability to parties other than the taxpayer involved. 1966 U.S.Code Cong. & Admin.News, p. 3722 et seq. Under these circumstances, we think it best to look to the specific language Congress chose to enact rather than the draftsman's illustrations. *See, e.g., Schwegmann Bros. v. Calvert*, 341 U.S. 384, 395, 71 S.Ct. 745 [750], 95 L.Ed. 1035 (1951) (Jackson, J., concurring). And that language does not preclude a taxpayer from availing himself of § 2410.

   *Aqua Bar*, 539 F.2d at 983.

*Lounge v. United States Dept. of Treasury,* 539 F.2d 935, 939 (3d Cir.1976); *Falik,* 343 F.2d at 42. Likewise, courts have held that a taxpayer may not mount a collateral attack on the merits of an assessment under the guise of an action to quiet title under section 2410(a). *Mulcahy v. United States,* 388 F.2d 300, 302 (5th Cir. 1968); *Pollack,* 819 F.2d at 145–46. The instant case is in a unique posture. The executor neither attacks the underlying assessment nor challenges the procedural regularity of the lien; rather, as the district court found, the executor seeks "a determination that the estate's administrative and funeral expenses take priority over the Government's lien, and a distribution of the assets pursuant to that determination."

The IRS maintains that the executor is the equivalent of Johnson for all federal tax purposes. Therefore, the argument goes, since Johnson, as a taxpayer, could not have brought this suit under section 2410(a), neither can the executor's action fall within the ambit of section 2410(a), for the estate can enjoy no greater rights than the taxpayer had before his death. While the district court apparently accepted this argument, we are not nearly so confident that taxpayers can use section 2410(a) *only* to challenge the procedural validity of tax liens and *not* to declare rights in the property—in other words, to quiet title. We see no need to decide that issue, however, since we conclude that under the circumstances of this case, the executor's suit is akin to an action to quiet title brought by a third party and, as such, is maintainable under section 2410(a).

As background, the executor points to our decision in *United States v. Morrison,* 247 F.2d 285 (5th Cir.1957). In *Morrison,* a vendor sought to establish the primacy of his equitable vendor's lien in a taxpayer's property over a federal tax lien. We found that while jurisdiction over the removal action was proper under section 2410, the vendor's lien was inferior to the tax lien.

In the course of our analysis, we stressed that:

> [W]e think that Section 2410, an integral part of the Judicial Code rather than an administrative mechanism of the tax structure, establishes a specific jurisdiction for these suits as bills to quiet title or for foreclosure of the private lien. The jurisdiction does not depend on the specific relief sought, [e.g.] foreclosure. Rather it rests on the existence of the traditional controversy in which a private party asserts an ownership which is superior to the claimed lien of the United States Government.

*Id.* at 290 (citations omitted). We went on to note that Congress, recognizing the possibility that such controversies could and would arise, found it essential that a means be available to determine such disputes lest the absence of judicial recourse depress the marketability of property subject to federal tax liens. *Id.* "The relief sought, as traditional to equity as the woolsack, is the judicial determination of the validity and rank of the competing liens." *Id.* Similarly, in *United States v. Creamer Indus.,* 349 F.2d 625 (5th Cir.), *cert. denied,* 382 U.S. 957, 86 S.Ct. 434, 15 L.Ed.2d 361 (1965), we tacitly accepted the proposition that a district court had jurisdiction under section 2410 to entertain a suit by a purchaser from the taxpayer who sought to quiet title. *Id.* at 627; *see also Mulcahy,* 388 F.2d at 302 (third parties authorized to bring suit under section 2410 to challenge validity of assessment).

▮ As an initial matter, we are confronted by the question of whether the executor's suit may properly be classified as an action to quiet title. We are compelled to answer this question in the affirmative. The executor does not dispute the fact that the IRS assessment was valid and that a federal tax lien attached to the property. Rather, the executor asserts that as the representative of the estate, he has an interest in the property [13] which, at

---

13. State law controls the determination of the nature of the legal interest a taxpayer may have in property. *See Randall v. H. Nakashima & Co., Ltd.,* 542 F.2d 270, 272 (5th Cir.1976). Under Texas law, the title to property is not suspended upon the owner's death; rather, "[w]hen a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will ...

least to the extent of costs of administration and funeral expenses, is superior to the interest claimed by the government. While it is true that the executor fails to present the typical section 2410(a) challenge to a federal tax lien by a third party purchaser or mortgagee holding an allegedly superior lien, we see no logical distinction between the instant case and that which the district court termed "the classic § 2410 situation." Both seek relief which would seem to fit within our earlier definition of a section 2410 quiet title action, to wit: "a determination that a tax lien does not exist, has been extinguished, *or is inferior in rank.*" *Morrison,* 247 F.2d at 291

(emphasis supplied). Therefore, given that the executor is seeking to clarify or determine the relative rights of the parties in the property, presumably as a matter of the interaction of state and federal priority laws,[14] his suit would seem the proper method for removing the clouds on title cast by the federal tax liens. *See, e.g., Aqua Bar,* 539 F.2d at 937–38.

■ Having determined that the present suit may be properly regarded as one to quiet title, we turn to the crucial issue of whether an executor, seeking to vindicate allegedly superior rights to property conferred upon the estate by priority statutes, may be viewed as a third party. Admitted-

---

shall vest immediately in the devisees or legatees of such estate ... and all the estate of such person, not devised or bequeathed, shall vest immediately in his heirs at law." Tex.Prob. Code Ann. § 37 (Vernon Supp. 1987). Incident to the succession, the beneficiaries take title subject to the payment of the debts of the testator, except such as are exempted by law. *Id.* The IRS does not contend that it owns the property. Its interest lies in the federal tax lien which continues to attach to the property after the death of the taxpayer. *See United States v. Bess,* 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958); *see also United States v. Rodgers,* 461 U.S. 677, 691 n. 16, 103 S.Ct. 2132, 2141 n. 16, 76 L.Ed.2d 236 (1983). The executor concedes this point but contends that federal and state law provide that estate administration and funeral expenses take priority over or "prime" a federal tax lien.

**14.** The Texas Probate Code's classification system for claims against the estate of a decedent provides, in pertinent part, that:

Claims against an estate of a decedent shall be classed and have priority of payment, as follows:

Class 1. Funeral expenses and expenses of last sickness for a reasonable amount to be approved by the court, not to exceed Five Thousand Dollars, any excess to be classified and paid as other unsecured claims.

Class 2. Expenses of administration and expenses incurred in the preservation, safekeeping, and management of the estate.

Class 3. Claims secured by mortgage or other liens, including tax liens, so far as the same can be paid out of the proceeds of the property subject to such mortgage or other lien, and when more than one mortgage or lien shall exist upon the same property, the oldest shall be first paid; but no preference shall be given to such mortgage or lien.

Tex. Prob. Code Ann. § 322 (Vernon Supp. 1987). The executor also points to 31 U.S.C. § 3713 which provides:

(a)(1) A claim of the United States Government shall be paid first when—

(A) a person indebted to the Government is insolvent and—

(i) the debtor without enough property to pay all debts makes a voluntary assignment of property;

(ii) property of the debtor, if absent, is attached; or

(iii) an act of bankruptcy is committed; or

(B) the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor.

(2) This subsection does not apply to a case under title 11.

(b) A representative of a person or an estate (except a trustee acting under title 11) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government.

In support of its contentions, the executor notes that a number of cases have held that administrative and funeral expenses take priority over a federal tax lien. *See, e.g., United States v. Weisburn,* 48 F.Supp. 393, 396–97 (E.D. Penn.1943) (according priority to federal tax claims "except as to payment which [executrix] made for administrative expenses, for funeral expenses, and for the headstone."); *Martin v. Dennett,* 626 P.2d 473, 475–76 (Utah 1981) (concluding that while 31 U.S.C. § 3713 accords priority to federal tax claims over the debts of the debtor, it does not accord a similar priority over debts of the estate, including administrative and funeral expenses); *In re Igoe,* 86–1 U.S. Tax Cas. (CCH) ¶ 9363 (Mo.App.1986) (IRS tax lien did not prime family and homestead allowances under Missouri state law). We do not presume to decide whether the executor's position on the merits will ultimately prevail. We merely note that the executor's position is not devoid of support.

ly, upon Johnson's death, the executor, as Johnson's personal representative, "stepped into his shoes" with respect to federal income tax liabilities. *See Price v. United States*, 335 F.2d 671, 675 (5th Cir. 1964) (citing *Miles v. Commissioner*, 12 B.T.A. 519 (1928)). Moreover, the executor succeeded to Johnson's rights with respect to outstanding tax deficiencies and assessments. *See* I.R.C. § 6903.[15] In the instant case, for example, the executor has exercised his rights by contesting in the Tax Court the deficiency underlying the original jeopardy assessment. Finally, it is undisputed that under Texas law, the decedent's estate is liable for debts owed by the decedent, including taxes. *See* Tex.Prob. Code Ann. §§ 3, 37, 320(a); *see also Ashbrook v. Hammer*, 106 S.W.2d 776, 779 (Tex.Civ.App.—Amarillo 1937, no writ). The IRS maintains that by bringing this suit, the executor is attempting "to disavow the estate's status as successor to the decedent, while he accepts the benefits of such status for purposes of the Tax Court case." These positions, the IRS argues, are obviously inconsistent.

We must take issue with the IRS' characterization of the executor's position. The executor has not disavowed the estate's status as Johnson's successor in all cases; rather, the executor contends that for the limited purpose of vindicating the statutory priority purportedly granted it by state and federal law, the estate is a third party eligible to maintain this suit under section 2410(a). We agree. The debts at issue here, the administrative and funeral expenses, are debts of the *estate* which could not have arisen while Johnson was alive. The executor makes a compelling argument that by refusing to entertain this suit, the district court has placed the executor in an untenable position. Without a judicial determination of rights in the property, the executor faces the prospect of steering a precarious course between the Scylla and Charybdis of potentially competing state and federal disbursement obligations.[16] Moreover, with no mechanism to secure the release of the seized property, the executor is without funds to administer the estate.

If, in fact, the administrative and funeral expenses prime the federal tax lien, there must be some way to give judicial effect to the validly conferred statutory priority. The section 2410 mechanism would seem peculiarly well adapted to the particular exigencies of the instant case. Thus, for the limited purposes of this case, we must conclude that the executor is a third party eligible to bring an action to quiet title to property burdened by federal tax liens under section 2410(a) and that the district court, therefore, has jurisdiction to entertain this case.[17] By so holding, we express no opinion whatsoever on the merits of the

15. I.R.C. § 6903 provides, in pertinent part, that:

> Upon notice to the Secretary or his delegate that any person is acting for another person in a fiduciary capacity, such fiduciary shall assume the powers, rights, duties, and privileges of such other person in respect of a tax imposed by this title (except as otherwise specifically provided and except that the tax shall be collected from the estate of such other person), until notice is given that the fiduciary capacity has terminated.

16. The executor, as a fiduciary, is obligated under Texas law to "recover possession of and hold such estate in trust to be disposed of in accordance with the law." Tex.Prob.Code Ann. § 37 (Vernon Supp.1987). In fulfilling his duties, the executor "shall take care of the property of the estate ... as a prudent man would take care of his own property." Tex.Prob.Code Ann. § 230 (Vernon 1980). Finally, the executor faces potential liability for the non-payment of claims or the payment of claims out of order with their priority. *See* Tex.Prob.Code Ann.

§ 328 (Vernon 1980); 31 U.S.C. § 3713(b). It seems clear that in carrying out his disbursement obligations, the executor, in the absence of a judicial declaration of priorities, may be unable to act without subjecting himself to an unacceptable risk of liability.

17. The IRS raises, by analogy, a decision by a Massachusetts district court in *Wersetsky v. United States*, 80–1 U.S.Tax Cas. (CCH) ¶ 9104 (D.Mass.1979), *aff'd by unpublished opinion* (1st Cir. July 30, 1980). In *Wersetsky*, the administrator of a decedent's estate, who was also the decedent's father, brought a wrongful levy suit under I.R.C. § 7426. The suit was dismissed for lack of jurisdiction on the ground that the administrator of an estate is not a third person for the purposes of challenging the levy. Applying Massachusetts law, the court held that for the purpose of asserting rights that accrued during the decedent's lifetime (i.e., contesting the decedent's income tax liability), the administrator is effectively the same person as the decedent. In so far as *Wersetsky* has any application to this

executor's position regarding the primacy of administrative and funeral expenses over a federal tax lien. That question is not properly before us and must be left to the considered judgment of the district court if further proceedings follow.

■ Finally, the IRS contends that even if the executor is entitled to maintain an action under section 2410(a), the suit would be barred by the Tax Anti–Injunction Act, I.R.C. § 7421(a), and the Declaratory Judgment Act, 28 U.S.C. § 2201. The *Aqua Bar* court rejected a similar argument and wrote:

> Quite obviously, the Declaratory Judgment Act poses no barrier to a suit by a third party to clear his property of a federal tax lien since the quiet title action specifically mandated by § 2410 is in substance a suit for a declaratory judgment. Likewise, the Anti–Injunction Act has been interpreted so as not to prohibit such third party suits. *United States v. Coson,* [286 F.2d 453, 458–59 (9th Cir. 1961)].

*Aqua Bar,* 539 F.2d at 940 (concluding that Declaratory Judgment and Anti–Injunction Acts were inapplicable to an action brought by a taxpayer when the taxpayer refrained from attacking the merits of the underlying assessment). The district court apparently rejected the IRS' argument on this point[18] and we see no error in that decision.

### III.

For the foregoing reasons, therefore, the judgment of the district court is RE-VERSED and REMANDED for further proceedings consistent with this opinion.

case, we note that it is readily distinguishable. The executor in the instant case is not contesting the validity of the assessment, nor is he seeking relief which Johnson might have sought while he was alive. Moreover, section 2410, as "an integral part of the Judicial Code rather than an administrative mechanism of the tax structure," may well be applicable even if I.R.C. § 7426 was clearly not. *Cf. Morrison,* 247 F.2d at 290.

**18.** The district court wrote:

Two statutes bar attacks against IRS jeopardy assessments. First, 26 U.S.C. § 7421(a), the Anti-Injunction Act, prohibits suits seeking to restrain the assessment or collection of any tax. Second, 28 U.S.C. § 2201, the Declaratory Judgment Act, contains an exception that exempts federal tax cases from its coverage. Nevertheless, 28 U.S.C. § 2410 clearly constitutes a waiver of sovereign immunity allowing a limited type of challenge to IRS action.