**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**CREDIT BANCORP, LTD., et al., Defendants.**

**No. 99 CIV. 11395(RWS).**

United States District Court, S.D. New York.

Sept. 1, 2000.

Robert B. Blackburn, Securities and Exchange Commission, Northeast Regional Office, New York City, Thomas M. Melton, Securities and Exchange Commission, Salt Lake District Office, Salt Lake City, UT, James B. Swire, Dorsey & Whitney, L.L.P., New York City, Lyndon Mitchell Tretter, Hogan & Hartson L.L.P., New York City, William A. Maher, Wollmuth, Maher & Deutsch L.L.P., New York City, Timothy J. Coleman, Asst. U.S. Atty., Mary Jo , U.S. Atty., Criminal Division, New York City, Michael J. levin, Barger & Wolen, L.L.P., New York City, John Mark Lane, LLP, Mamaroneck, NY, for Plaintiffs.

Proskauer Rose, Proskauer Rose, LLP, Los Angeles, CA, Richard Marmaro, McCambridge, Deixler & Marmaro LLP, Los Angeles, CA, Andrew Tomback, Milbank, Tweed, Hadley & McCloy L.L.P., New York City, Richard A. Getty, Getty, Keyser & Mayo, LLP, Lexington, KY, Thomas R. Pattison, Pattison & Flannery, New York City, William R. Mait, Mait, Wang & Simmons, New York City, for Defendants.

## MEMORANDUM OPINION

SWEET, District Judge.

By Order to Show Cause of July 18, 2000, Carl H. Loewenson, Jr. (the "Receiver"), seeks an order directing non-party Ameritrade, Inc. ("Ameritrade") to deliver to the Receiver the 225,000 shares of Centigram Communications Corporation ("Centigram") common stock (the "Centigram Shares") currently held in an account in the name of Credit Bancorp, Ltd. ("Credit Bancorp") with Ameritrade which, according to an account statement obtained by the Receiver, is account number 160–993952. This motion is opposed by Ameritrade. By Notice of Motion dated July 20, 2000, Ameritrade seeks an order permitting it to intervene in this action and for relief from this Court's November 23, 1999 asset freeze order (the "Asset Freeze Order"). The Receiver does not oppose intervention by Ameritrade in this action but does oppose the request for relief from the Asset Freeze Order. For the reasons set forth below, the motion by the Receiver is granted and the motion by Ameritrade is granted in part and denied in part.

### Facts and Prior Proceedings

The following facts are gleaned from the submissions by the parties. They are either undisputed or presumed true for purposes of the instant proceeding.[1]

---

1. Ameritrade's argument includes a number of factual contentions pertaining to its purported security interest in stock held in the Ameritrade Account. The Receiver does not concede the validity of this security interest or the truth of the factual allegations pertaining

On June 14, 2000, this Court approved an agreement between Centigram and the Receiver pursuant to which the Receiver is to deliver 900,000 shares of Centigram stock to Centigram in exchange for a payment of $12,095,325 from Centigram to the receivership estate, as well as other consideration. The agreement requires the Receiver to "use all commercially reasonable efforts to deliver" the 900,000 shares to Centigram.

The Centigram shares are treasury shares which are to be returned to Centigram to facilitate the purchase of Centigram by a corporate suitor. The closing of that transaction is scheduled for July 27, 2000. Therefore, the Receiver must deliver the Centigram shares by that date.

The 900,000 Centigram shares had been maintained by Credit Bancorp in four separate brokerage accounts, including 225,000 shares in the Ameritrade Account. The three brokerage firms other than Ameritrade have delivered the Centigram shares held with them to the Receiver. Ameritrade, however, has refused to turn over the Centigram Shares held in the Ameritrade Account.

The Ameritrade Account carries a margin balance of $3.434,167. The total value of the securities in the Ameritrade Account after removing the Centigram shares is $11,804,655, of which $10,531,500 consists of 500,000 shares in Vintage Petroleum, Inc. ("Vintage Petroleum") common stock and $1,273,155 consists of shares in other companies. Thus, the equity in the account, i.e., its total market value minus margin debt, is approximately 70% of the total market value of the account.

Consistent with the prevailing practices in the brokerage industry, Ameritrade ordinarily requires that the equity in a margin account not fall below 30% of the total market value of that account. However, pursuant to the terms and conditions of the margin agreement with Credit Bancorp, Ameritrade has the right to unilaterally increase the required level of equity.

After receiving submissions from the Receiver and Ameritrade, these matters were deemed fully submitted on July 21, 2000.

### Discussion

#### I. The Motion By Ameritrade

##### A. Permissive Intervention Will Be Granted

■ Ameritrade seeks to intervene in this action in order to protect its alleged security interest in stock held in the Ameritrade Account. The Receiver does not oppose intervention by Ameritrade. The Receiver also represents to the Court that the Securities and Exchange Commission ("SEC") is not opposed to such intervention. Ameritrade seeks intervention as of right under Federal Rule of Civil Procedure 24(a). Intervention as of right is not appropriate. However, pursuant to this Court's broad discretion to allow permissive intervention in a case involving multiple parties and claims, Ameritrade will be permitted to intervene under Federal Rule of Civil Procedure 24(b).

##### B. Ameritrade Must Comply With The Asset Freeze Order

■ Ameritrade seeks relief from the Asset Freeze Order, pursuant to which the stocks held in the Ameritrade Account are frozen. Ameritrade requests this relief so that it may immediately sell as much collateral as necessary to retire what it contends is a margin debt on the part of Credit Bancorp of approximately $3.4 million. Such relief would be directly con-

---

to that claim, such as the existence and amount of any margin debt and the existence of a valid security agreement between Ameritrade and Credit Bancorp. However, the Receiver presumes these facts to be true for purposes of this proceeding. Therefore, the facts recited herein do not constitute findings by the Court in relation to such matters, including the existence of a margin debt, the existence or terms of a margin agreement, or the validity of Ameritrade's alleged security interest.

trary to the interests of the receivership estate as it would interfere with the Receiver's efforts to marshall and take control over all Credit Bancorp's assets for the benefit of all the parties in interest. Moreover, the Court presently has pending before it three proposed plans for partial distribution of the Receivership estate pursuant to which valid margin debts are to be satisfied. Satisfaction of any such debt owing to Ameritrade should be accomplished as part of such a plan rather than through a piecemeal approach. Therefore, Ameritrade's request for relief from the Asset Freeze Order is denied.

## II. *The Motion By The Receiver For Delivery Of The Centigram Shares*

### A. *An Order Compelling Delivery Of The Stock Is An Appropriate Ancillary Remedy*

■ This Court has "broad powers and wide discretion" to fashion appropriate equitable relief in a securities enforcement action. *Securities and Exch. Comm'n. v. Elliott*, 953 F.2d 1560, 1569 (11th Cir.1992) (discussing equitable powers of district court in securities enforcement action); *see Securities and Exch. Comm'n. v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1103 (2d Cir.1972) (citations omitted) (observing district court's "necessary power to fashion an appropriate remedy" where equitable jurisdiction has been invoked by showing of securities law violation); *see also generally* 13 James Wm. Moore et al., *Moore's Federal Practice* § 66.06[4][a] at 66–24 to 66–27 (3d ed.1997) (discussing district court's broad latitude in supervising equity receiverships).

■ The Centigram Agreement was approved, pursuant to this Court's equitable powers, for the benefit of the receivership estate. The proceeds of that agreement are a necessary component of each of the proposed plans of partial distribution currently pending before the Court. Those proceeds are also needed to cover adminis-

trative and other costs of the Receivership estate. The transfer of the Centigram Shares from the Ameritrade Account is an important part of the Centigram Agreement. Thus, an order directing Ameritrade to deliver the Centigram Shares promotes the goals of this equity receivership in direct and important ways.

Ameritrade contends that it is entitled to retain all of the shares in the Ameritrade Account as collateral for the Credit Bancorp margin debt. In its own words, Ameritrade's "sole objective here is to be in a position to sell securities sufficient to retire the margin debt." Ameritrade avers that if it is not permitted to retain the Centigram Shares then the value of the collateral held in the account will be so eroded that Ameritrade will not be able to protect its security interest.

However, Ameritrade's objective is not compromised by an order compelling it to turn over the Centigram Shares. After removal of the Centigram Shares the collateral remaining in the Ameritrade Account represents an equity level of 70%. Assuming for purposes of this motion that Ameritrade has a valid security interest in the contents of the Ameritrade Account, a 70% equity level is substantially greater than what is ordinarily required in the industry, and is more than adequate for the purpose of retiring the margin debt.

Ameritrade contends that it has the right pursuant to the margin agreement to raise the equity requirement beyond ordinary levels based on the circumstances. Specifically, Ameritrade contends that it is justified in requiring such an increase here because the stocks remaining in the account after removal of the Centigram Shares would be too heavily concentrated in one company, i.e., Vintage Petroleum. However, in order for the equity level to be such that Ameritrade could not sell securities sufficient to retire this debt, the price of Vintage Petroleum common stock would have to drop from its closing price of $19.875 on July 20, 2000, to $4.32 per share. This would represent a decrease of

over 70% in the stock price. There is no basis in the record for concluding that there is a real risk of such a drop in the price. Moreover, Ameritrade is not without recourse in the event that the Vintage Petroleum stock begins to decline significantly in value. In that event it could move before this Court for the right to sell shares out of the Ameritrade Account.

In addition, all three of the plans for partial distribution of the Receivership estate pending before the Court provide for satisfaction of secured margin debt from the assets of the estate. If Ameritrade ultimately succeeds in its claim that it has a valid security interest then the debt may be satisfied from any of the estate assets and not only from stock held in the Ameritrade account. Thus, Ameritrade's interest would be protected even if the Vintage Petroleum price were to fall substantially.

Therefore, the order sought by the Receiver is an appropriate form of ancillary relief directed at furthering the goals of the receivership estate and protecting the parties in interest.

### B. *Oral Argument Is Not Warranted*

 By letter of July 19, 2000, Ameritrade requested oral argument on the Receiver's motion. Under the circumstances, however, resolution of the matter on the written submissions is appropriate and is consistent with due process.

■ Included within the court's powers in administering the receivership estate and fashioning appropriate equitable relief is the discretion to use summary proceedings, so long as those affected are afforded adequate notice and an opportunity to be heard. *See, e.g., Elliott,* 953 F.2d at 1567 (district court has discretion to use summary proceedings so long as parties provided with notice and opportunity to be heard); *Commodity Futures Trading Commission v. Topworth Int'l, Ltd.,* 205 F.3d 1107, 1113 (9th Cir.2000) (district court within its discretion to use summary proceedings initiated by order to show

cause to resolve "the claims of nonparties to property claimed by proceedings ... so long as there is adequate notice and opportunity to be heard"). Indeed, summary proceedings have the salutary effect in actions such as this one of preventing further dissipation of the receivership assets through unnecessary litigation costs and promoting judicial efficiency. *See Elliott,* 953 F.2d at 1566 (*citing Securities and Exch. Comm'n. v. Wencke,* 783 F.2d 829, 837 (9th Cir.1986)).

As explained above, time is of the essence with respect to the Receiver's motion. Moreover, the relevant facts are either undisputed or are presumed to be as set forth by Ameritrade. Ameritrade was provided with notice and an opportunity to be heard and, indeed, both parties provided the Court with substantial written submissions. Under these circumstances, additional proceedings are not required.

### *Conclusion*

Therefore, for the reasons set forth above the motion by the Receiver is granted, and the motion by Ameritrade is granted in part and denied in part. Ameritrade is hereby directed to deliver the Centigram Shares to the Receiver by July 27, 2000.

It is so ordered.