297 F.3d 127
 SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,
United States of America, Intervenor-Appellant,
Gene W. RAY, Dr., Centigram Comm. Corp., Stephen J. Cole-Hatchard, Nicko Feinberg, Leonard Zera, Trustee for Lathrop Investment Trust and Harrington Irrevocable Trust, Cole-Hatchard Family Limited Partnership, Michael Olberman & John Dillon, Intervenors-Plaintiffs,
Stephenson Equity, Co., Thomas Stappas, Vincent J. Bagli, Andrew Calcagno, Regina Calcagno, Richard J. DuPont, Barbara DeYoung, Ronald DeYoung, Concetta G. Frato, George G. Luce & James F. Luce, TTEES FBO Luce Schwab & Case, Inc. Profit Sharing Plan, Frank Mignogna, TTE of Head & Neck Surgical Associates Retirement Trust, Robert Praegitzer, Stephen Robbins, Kurt G. Richter & Steven Allen, & Lorraine Jankowski, Intervenors-Plaintiffs-Appellees,
v.
CREDIT BANCORP, LTD., Credit Bancorp, Inc., & Richard Jonathan Blech, Defendants-Intervenors-Defendants,
Carl H. Loewenson, Jr., Receiver-Appellee,
Douglas C. Brandon & Thomas Michael Rittweger, Defendants-Intervenors-Defendants-Cross-Defendants,
Credit Suisse, Swiss American Securities, Inc., Ing Baring Private Bank (Switzerland), Ltd., Brown Brothers Harriman & Co., Federal Insurance Company, Third-Party-Defendants.
 Docket No. 01-6158.
 United States Court of Appeals, Second Circuit.
 Argued: October 11, 2001.
 Submitted: November 14, 2001.
 Decided: July 18, 2002.
 
 COPYRIGHT MATERIAL OMITTED Edward Chang, Assistant United States Attorney, New York, N.Y. (Mary Jo White, United States Attorney for the Southern District of New York, Jeffrey Oestericher, Assistant United States Attorney, New York, NY, on the brief), for Intervenor-Appellant.
 Carl H. Loewenson, Jr., New York, N.Y. (Charles L. Kerr, Oliver Metzger, Andrew J. Fields, Nancy R. Thomas, Eleonore Dailly, Morrison & Foerster, New York, NY, on the brief), for Receiver-Appellee.
 Before WALKER, Chief Judge, NEWMAN and KEARSE, Circuit Judges.
 KEARSE, Circuit Judge.
 
 
 1
 The United States of America (the "Government"), an intervenor in this enforcement action brought by the Securities and Exchange Commission ("SEC") against defendants Credit Bancorp, Ltd., and its affiliated entities (collectively "Credit Bancorp" "Bancorp" or "CBL"), appeals from so much of a May 16, 2001 order ("May 2001 Order") of the United States District Court for the Southern District of New York, Robert W. Sweet, Judge, as granted the motion of Carl H. Loewenson, Jr., CBL's receiver (the "Receiver"), for a declaration (1) that, from the assets deposited with Bancorp by its customers, along with the proceeds derived therefrom and the receipts of the receivership, debts to CBL customers have priority over tax debts to the Government; and (2) that the Receiver, in making distributions in accordance with a plan of partial distribution conditionally approved by the court, will incur no personal liability under the Federal Debt Priority statute, 31 U.S.C. § 3713(b), for tax debts of Bancorp or the receivership. The district court rejected the Government's contention that sovereign immunity had not been waived and that the court thus lacked subject matter jurisdiction to make such declarations, ruling that jurisdiction existed under 28 U.S.C. § 2410(a)(1) and as a matter of necessity. See 138 F.Supp.2d 512, 526-28 (2001). On appeal, the Government principally pursues its jurisdictional contentions. For the reasons that follow, we conclude that sovereign immunity has not been waived; we thus vacate the May 2001 Order for lack of jurisdiction and remand for dismissal of the Receiver's motion.
 
 I. BACKGROUND
 
 2
 The present action was brought by the SEC against Credit Bancorp in November 1999, alleging, inter alia, that CBL had engaged in a Ponzi scheme that defrauded its customers in violation of § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. As discussed in this Court's recent decision in SEC v. Credit Bancorp, Ltd., 290 F.3d 80 (2d Cir. 2002), Bancorp had persuaded investors (referred to by the parties and the district court as "customers") to transfer cash and securities to it in order to enable it to engage in what it described as "riskless arbitrage" trading, and it promised to pay customers dividends based on the value of the unencumbered assets transferred by the customer. See id. at 83. Bancorp thereafter did pay some customers dividends, but only out of deposits it received from other customers. By the time the SEC commenced this suit and obtained a freeze of Bancorp's assets, Bancorp had victimized more than 200 customers and lost tens of millions of dollars of their assets.
 
 
 3
 Shortly after freezing Credit Bancorp's assets, the district court appointed Loewenson as Bancorp's fiscal agent; on January 21, 2000, the court appointed him Receiver. Bancorp was ordered to turn over all funds, property, documents, and records to the Receiver, who was granted broad powers to, inter alia, issue subpoenas, marshal CBL assets, liquidate those assets, and reinvest the proceeds in Treasury instruments. The freeze order directed the Receiver not to return any securities or other assets to Credit Bancorp's customers without further order of the court. In April 2000, the United States, by the United States Attorney for the Southern District of New York, sought and obtained permission to intervene in the action for the limited purpose of seeking a stay of discovery pending completion of related criminal proceedings with regard to Bancorp, its chief executive officer Richard Blech, and others.
 
 
 4
 A. The Receiver's Distribution Plan and Motion for Priority
 
 
 5
 In May and June 2000, the SEC and groups of intervening customers submitted to the district court three competing plans for interim distributions of Bancorp assets marshaled by the Receiver. In October 2000, the Receiver, after unsuccessfully attempting to negotiate a consensus plan, submitted to the court his own interim distribution plan. Under the Receiver's plan, customers who had transferred to CBL identifiable securities that were in the possession of the Receiver would be given an opportunity to retrieve them by depositing with the Receiver "Undertakings" — i.e., cash or United-States-government-backed securities in amounts equaling a specified percentage of the current market value of the securities; the cash Undertakings would be used by the Receiver to make pro rata distributions to customers whose deposits with CBL had been lost. Oral argument on the Receiver's plan was heard in mid-October, and decision was reserved.
 
 
 6
 Thereafter, the Receiver served a motion dated November 8, 2000, on the Office of the United States Attorney for the Southern District of New York in order to bring "[t]he Government ... into this action in its capacity as the Internal Revenue Service," 138 F.Supp.2d at 515. The motion asked the district court for an order
 
 
 7
 declaring that Credit Bancorp Ltd.'s customers have priority over the United States ... for payment from the customer-deposited assets, as well as the proceeds therefrom and cash receipts of the receivership [and] declaring that in notifying the Court and the potentially affected governments of the potential for tax liability, the Receiver has discharged his obligations pursuant to [the Federal Debt Priority statute,] 31 U.S.C. § 3713(b)
 
 
 8
 ....
 
 
 9
 (Receiver's Notice of Motion dated November 8, 2000 ("Priority Declaration Motion" or "Motion").) The Federal Debt Priority statute provides the federal government, in certain circumstances, with priority over other claimants as to the payment of debts, including tax debts, owed by an insolvent debtor, see 31 U.S.C. § 3713(a)(1), and states that a "representative of a person or an estate ... paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government," id. § 3713(b).
 
 
 10
 The Receiver and the Government began negotiations with respect to Credit Bancorp's tax liability. Eventually, as discussed in Part I.B. below, the Receiver and the Government entered into a stipulation in February 2001 dealing with CBL's tax liability for the period prior to, but not after, the Receiver's appointment.
 
 
 11
 In the meantime, in an opinion dated November 29, 2000, the district court largely approved the Receiver's plan, finding it more equitable and more feasible than the other plans. Thereafter, in response to the court's expression of concern with respect to certain customers, the Receiver submitted a revised interim distribution plan, which the court approved in an opinion dated January 19, 2001. The court entered a detailed order, also dated January 19, 2001 ("January 2001 Order" or "Order"), setting out the terms of the plan, which provided essentially that the Receiver would, in exchange for the Undertakings, return identifiable securities under his control to the Bancorp customers who had deposited them with Bancorp, and that the Receiver would use the Undertakings principally to (a) facilitate a general pro rata distribution for those CBL customers whose securities and other assets had been transferred or lost, (b) provide collateral for claims by broker-dealers, and (c) fund the administration of the receivership. The January 2001 Order provided, however, that the Order was not to become effective prior to approval of the Receiver's request for priority treatment of customer debts:
 
 
 12
 This Order shall become effective upon further order of this Court, either by the entry of a stipulation and order between the Receiver and the United States permitting the distribution set forth herein to proceed, or by a separate order of this Court declaring that Credit Bancorp's customers have priority over the United States and the States for payment from the customer-deposited assets, as well as the proceeds therefrom, and that the distribution set forth herein may proceed without payment by CBL or the Receiver to the IRS.
 
 
 13
 January 2001 Order ¶ U.
 
 
 14
 B. The Stipulation Between the Receiver and the Government
 
 
 15
 The Government did not formally respond to the Receiver's November 2000 Priority Declaration Motion. After obtaining extensions of time to respond and negotiating with the Receiver toward a settlement of the issues raised by the Motion, the Government informed the district court in February 2001 that the United States had not waived its sovereign immunity and took the position that the district court thus did not have jurisdiction to grant the declaratory relief requested in the Motion. On February 28, 2001, the Receiver and the Government entered into a stipulation (the "Stipulation" or "Stipulation and Order") resolving some of the issues raised in the Priority Declaration Motion. In the Stipulation, the Government agreed not to assert a federal tax lien on certain specified present and future receivership assets and agreed that it would not assert that the Receiver had any liability under § 3713(b) for Credit Bancorp's tax liability resulting from income generated prior to his January 21, 2000 appointment. The Government reserved the right to assert a tax lien or priority against any other assets or future assets of Credit Bancorp or the receivership, and it did not agree not to assert that the Receiver had tax liability resulting from income generated after his appointment. The pertinent provisions read as follows:
 
 
 16
 The relative priorities among the United States, Credit Bancorp and its customers with respect to assets not listed in paragraph 2 are not determined by this Stipulation and Order, and the receiver reserves the right to continue to assert the positions set forth in support of his Motion and Renewed Motion as to those assets.
 
 
 17
 4. The United States reserves the right to assert a tax lien or to assert priority against any asset listed in paragraph 2 remaining in the receivership estate after payment of the administrative expenses of the receivership and a determination by the Court that each customer has been compensated for the value of the securities and other assets deposited with Credit Bancorp, less any custodial dividends paid by Credit Bancorp and any outstanding loan balance owed to Credit Bancorp.
 
 
 18
 ....
 
 
 19
 6. Notwithstanding any other provision of this Stipulation and Order, nothing herein shall be taken to determine for tax purposes the characterization of or liability with respect to the proceeds of any sale of customer securities pursuant to ¶ G of the Distribution Plan, or any other amounts earned, accrued or added to the receivership estate subsequent to January 21, 2000.
 
 
 20
 7. Notwithstanding any other provision of this Stipulation and Order, the United States shall not be deemed to have waived its rights, if any, to assess or collect federal income taxes of Credit Bancorp's customers arising from the Stipulated Distribution.
 
 
 21
 ....
 
 
 22
 9. Nothing herein shall waive any of the Government's defenses, including but not limited to sovereign immunity and lack of subject matter jurisdiction, with respect to any additional relief that the receiver may seek.
 
 
 23
 (Stipulation ¶¶ 3-4, 6-7, 9.)
 
 
 24
 C. The District Court's Declaration of Priority Over IRS Claims
 
 
 25
 The Receiver promptly renewed his motion for a declaration that payment of CBL's debts to its customers took priority over its tax liabilities and that the Receiver would incur no personal liability in making the distributions called for by his plan. The Receiver argued that virtually all of the assets already in the receivership estate and much of the property he anticipated the estate would receive, either through his own efforts or through the Undertakings delivered pursuant to the partial distribution plan, should be considered subject to a constructive trust in favor of CBL customers; if the assets were subject to such a constructive trust, CBL would have had no property interest in the assets, and the assets could not be applied to satisfy Bancorp's tax liabilities.
 
 
 26
 The Government opposed the motion, contending that the United States had not waived its sovereign immunity and that the district court thus lacked subject matter jurisdiction to grant the relief requested by the Receiver. The Government argued that the Receiver's motion sought relief with respect to federal taxes, and pointed out that the Declaratory Judgment Act allows the court to declare the parties' rights and obligations "except with respect to Federal taxes," 28 U.S.C. § 2201(a), and that the Anti-Injunction Act states in pertinent part that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed," 26 U.S.C. § 7421(a).
 
 
 27
 The Receiver argued that a waiver of sovereign immunity was to be found in, inter alia, the Judicial Code provision that permits certain actions "to quiet title to... real or personal property on which the United States has or claims a mortgage or other lien," 28 U.S.C. § 2410(a). The Government pointed out that in all of the § 2410(a) cases relied on by the Receiver, a federal tax lien had been asserted, and it argued, inter alia, that the section was inapplicable here because the Government possessed no lien, had asserted no lien, and had not determined Credit Bancorp's tax liability, if any.
 
 
 28
 The Receiver also argued that jurisdiction could be premised on the exceptions to the Anti-Injunction Act recognized in South Carolina v. Regan, 465 U.S. 367, 381, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984) ("Regan") (Anti-Injunction Act does not apply when Congress has not "provided an alternative avenue for an aggrieved party to litigate its claims on its own behalf"), or Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 6-7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962) ("Williams Packing") (Anti-Injunction Act does not apply where "it is clear that under no circumstances could the Government ultimately prevail" and that "irreparable injury" would occur without the requested relief).
 
 
 29
 In an opinion dated April 6, 2001, reported at 138 F.Supp.2d 512, the district court rejected the Government's jurisdictional arguments, finding the requisite waiver of sovereign immunity in § 2410(a). The court stated that
 
 
 30
 [s]ection 2410(a)(1) does not constitute a waiver of sovereign immunity with respect to challenges to the merits of the federal government's tax assessment or lien....
 
 
 31
 However, § 2410(a)(1) does serve as a waiver of the United States' sovereign immunity with respect to disputes concerning the priority of competing liens. See, e.g., Progressive Consumers [Federal Credit Union v. United States, 79 F.3d 1228, 1232-33 (1st Cir.1996)] ("[S]ection 2410(a)(1) controversies encompass disputes concerning both the `validity and priority of liens' as distinguished from actions seeking `their extinguishment'....") ....
 
 
 32
 Suits to determine lien priority under the quiet title provision of § 2410 are not barred by the Declaratory Judgment or Anti-Injunction Acts. See Progressive Consumers, 79 F.3d at 1234 (Declaratory Judgment Act does not bar quiet title action seeking determination of lien priority)....
 
 
 33
 The reduction of the pool of possible assets available for collection by the government, however, is precisely the result in the cases that have found lien priority challenges to fall within § 2410(a)(1), since a finding that the moving party's lien is superior to the government's lien necessarily means that the assets available to the government to satisfy any tax assessment or collection are decreased. See, e.g., Progressive Consumers, 79 F.3d at 1232 .... "Admittedly, any challenge to the validity of a federal tax lien and sale indirectly interferes with the tax collection process which [the Declaratory Judgment Act and the Anti-Injunction Act] are designed to protect from undue litigation outside the Tax Court." Aqua Bar [& Lounge, Inc. v. IRS, 539 F.2d 935, 940 (3rd Cir. 1976)]. Nonetheless, § 2410(a)(1) permits litigants to seek declaratory relief against the government regarding the priority of competing liens. See id.
 
 
 34
 ....
 
 
 35
 The Receiver does not dispute that Credit Bancorp may owe substantial federal tax liability. What the Receiver seeks, however, is a determination regarding who holds property interests in the Protected Property. Thus, the Receiver has not challenged an underlying tax assessment or collection effort but, rather, seeks a determination regarding the priority of competing liens and, under the authorities just discussed, there is subject matter jurisdiction over this motion.
 
 
 36
 The Government also objects, however, that the Receiver cannot rely on § 2410(a)(1) because the Government has not actually made an assessment and does not presently have a lien on the receivership estate. Therefore, according to the Government, the United States neither "has nor claims a lien," 28 U.S.C. § 2410(a)(1), on the Protected Property.
 
 
 37
 ....
 
 
 38
 Although no tax liability has yet been assessed against Credit Bancorp, there is a potential that a substantial assessment will be made in the future. This potential is far from speculative. After negotiations between the Receiver and the Government, and the entry of the Stipulation, the Government specifically reserved its rights to assert a tax lien or to assert priority as to certain receivership assets, including but not limited to the Post-Receivership Income. While the Government avers that the Receiver's predictions of the potential Credit Bancorp tax liability are exaggerated, it is apparent that the Government contemplates that some tax liability will result from the assets not included in the Stipulation. Moreover, the practical effect of the Government's position is much the same as would be the effect of an actual lien in that the Receiver cannot implement the partial distribution plan until the issue of the Government's right to these assets is resolved.
 
 
 39
 138 F.Supp.2d at 522-525.
 
 
 40
 The district court also found that § 2410(a) essentially gave it jurisdiction to declare that in executing the partial distribution plan, the Receiver would not be liable under the Debt Priority statute, reasoning that "the issue of whether [the Receiver] has satisfied his obligations under § 3713(b) is inseparable from the issue of lien priority under § 2410(a)(1)," and that "the effect of finding jurisdiction under § 2410(a)(1) would be to protect the executor from the dangers he would otherwise face under § 3713(b) — assuming, of course, that he complied with the judicially determined priorities." 138 F.Supp.2d at 527.
 
 
 41
 The court also concluded that if § 2410(a) did not provide jurisdiction, it had jurisdiction under the exception announced in Regan on the basis that "there is no alternative means for resolving the potential conflict between implementing the partial distribution plan and the incurrence of extraordinary personal liability," 138 F.Supp.2d at 528. Although the court noted that prerequisites for application of the Regan exception to the Anti-Injunction Act are difficult to meet, and that the Receiver could, in theory, like any other taxpayer, pay first and litigate later, it found the Regan exception applicable here because
 
 
 42
 [t]his is a special type of case. It is the court that imposed the receivership, and the court that appointed the Receiver. If the Receiver cannot obtain review of his motion regarding personal liability then he has two choices. He can implement the partial distribution plan as presently structured, but at the risk of extraordinary personal liability. Or he can set aside reserves from the receivership funds to provide for the eventuality that this personal liability will come to pass, and to cover that liability. Neither of these courses of action is tenable. Thus, the effect of not affording the Receiver a way to have the personal liability issue determined at this stage would be to bring the receivership and any partial distribution under the receivership to a halt. The available alternatives are thus not merely inadequate as a practical matter but defeat the very purpose of the receivership. Therefore, applying Regan to the facts of this case leads to the conclusion that there is subject matter jurisdiction under the Regan exception.
 
 
 43
 138 F.Supp.2d at 528. Having found jurisdiction under § 2410(a) and Regan, the district court found it unnecessary to consider whether it also had jurisdiction under the Williams Packing exception.
 
 
 44
 The court largely, to the extent pertinent to this appeal, granted the Receiver's Priority Declaration Motion. An order was entered on May 16, 2001 ("May 2001 Order"), so-ordering the Stipulation between the Receiver and the Government and providing that
 
 
 45
 [t]he Receiver shall implement the Plan of Partial Distribution pursuant to this Court's opinion dated November 29, 2000, SEC v. Credit Bancorp, Ltd., 2000 WL 1752979 (S.D.N.Y. Nov. 2000); its opinion dated January 19, 2001, SEC v. Credit Bancorp, Ltd., 129 F.Supp.2d 259 (S.D.N.Y.2001); its order dated January 19, 2001; and all subsequent orders;
 
 
 46
 C. The property described in this paragraph C may not be applied to satisfy liabilities for Taxes, if any, of CBL, Richard Blech, any other defendant, the Receiver, or any entity, fund, or account created or deemed to be created by the Receiver or pursuant to Order of this Court. ...
 
 
 47
 ....
 
 
 48
 I. After due consideration by this Court of the arguments of the Receiver and of the United States and in light of this Court's April 6 Opinion, the Receiver has discharged his obligations under 31 U.S.C. § 3713, and neither the Receiver nor his counsel, accountants, consultants or agents may be held liable for Taxes for effectuating the Plan of Partial Distribution.
 
 
 49
 May 2001 Order ¶¶ B, C, I (emphasis added). This appeal followed.
 
 II. DISCUSSION
 
 50
 On appeal, the Government contends principally that the district court erred in finding a waiver of sovereign immunity in 28 U.S.C. § 2410 or under the Regan exception to the Anti-Injunction Act and in refusing to apply the plain language of that statute and of the express exception stated in the Declaratory Judgment Act. In opposition, the Receiver argues, inter alia, that the Declaratory Judgment Act and the Anti-Injunction Act are inapplicable because he "does not challenge any underlying assessment or collection effort." (Receiver's brief on appeal at 27.) Alternatively, the Receiver argues that the court's reliance on Regan was correct or that the court could properly have premised jurisdiction on Williams Packing, or on the Administrative Procedure Act, 5 U.S.C. § 702, or on the Government's prior intervention in the case seeking a stay of discovery.
 
 
 51
 Preliminarily, we note our jurisdiction to entertain this appeal. First, since the district court's May 2001 Order effects a modification of the original order freezing Bancorp's assets, see SEC v. Credit Bancorp, Ltd., 290 F.3d at 82, which was initially entered as a temporary restraining order and continued as a preliminary injunction, the order is immediately appealable pursuant to 28 U.S.C. § 1292(a)(1) ("Interlocutory orders of the district courts ... modifying ... injunctions" are appealable.). Second, the Order is immediately appealable under the "practical finality doctrine," or Forgay-Conrad doctrine, under which "a judgment requiring immediate delivery ... of property while further proceedings in the action continue is final for purposes of appellate review" where the appealing party would be irreparably injured if appellate review were delayed pending conclusion of the entire action. 19 Moore's Federal Practice § 202.08, at 202-32 (3d ed.1999); see, e.g., Radio Station WOW, Inc. v. Johnson, 326 U.S. 120, 126, 65 S.Ct. 1475, 89 L.Ed. 569 (1945); Forgay v. Conrad, 47 U.S. (6 How.) 201, 204, 12 L.Ed. 404 (1848).
 
 
 52
 As to the merits of the appeal, we conclude for the reasons that follow that the United States has not waived its sovereign immunity so as to permit a declaration as to the tax liabilities of Bancorp or the Receiver.
 
 A. General Principles of Sovereign Immunity
 
 53
 "It is well established that `[t]he United States, as sovereign, is immune from suit save as it consents to be sued.... [T]he terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' .... Any waiver of the government's sovereign immunity is to be strictly construed in favor of the government." Long Island Radio Co. v. NLRB, 841 F.2d 474, 477 (2d Cir. 1988) (quoting United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). Thus, the court is given jurisdiction to entertain a claim against the United States only to the extent of the waiver; the court has no power to broaden a limited waiver of immunity. See, e.g., Long Island Radio Co. v. NLRB, 841 F.2d at 477 ("Since jurisdiction to entertain a claim against the United States exists only as Congress has granted it, neither an agency nor a court has the power to entertain claims that do not meet the conditions limiting the waiver of immunity.").
 
 
 54
 Section 1340 of 28 U.S.C. gives the federal district courts "original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue," 28 U.S.C. § 1340; but as a general jurisdictional statute, it does not of itself constitute a waiver of sovereign immunity. See, e.g., Kulawy v. United States, 917 F.2d 729, 733 (2d Cir.1990); Falik v. United States, 343 F.2d 38, 40 (2d Cir.1965) ("Falik"). The Declaratory Judgment Act, with certain exclusions not relevant here, allows a federal court to declare the rights and obligations of the parties properly before it in any "case of actual controversy within its jurisdiction, except with respect to Federal taxes." 28 U.S.C. § 2201(a) (emphasis added). Thus, whether or not that Act waives the sovereign immunity of the United States with respect to other types of actions, it explicitly excludes from any such waiver the power to declare rights or obligations with respect to federal taxes.
 
 
 55
 We disagree with the Receiver's contention that this provision is inapplicable to the present matter, for, insofar as the Government is concerned, the precise focus of the Receiver's Priority Declaration Motion was federal taxes. The Receiver sought to bring the United States into this action in its capacity as the IRS. He sought a declaration that customer debts have priority over Bancorp's federal tax debts, and he sought a declaration as to his own liability for Bancorp's federal taxes if he proceeds with the partial distribution plan. We conclude that, in the absence of some other waiver of sovereign immunity, the Declaratory Judgment Act deprived the district court of the power to grant the declarations sought by the Receiver.
 
 
 56
 That absence of power is further reflected in the Anti-Injunction Act. That statute provides, with exceptions not relevant here, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). Although the district court's order in the present case is not in the form of an injunction, there can be no doubt that the purpose of the Receiver's Priority Declaration Motion was to preclude any possibility of the Government's collection of taxes out of specified Bancorp property or from the Receiver. Indeed, in a supplemental brief to this Court addressing the matter of appellate jurisdiction, the Receiver states that "[a]lthough not formally denominated an `injunction,' the May [2001] Order is injunctive in nature in ordering specified parties to undertake or not to undertake particular actions." (Receiver's supplemental brief on appeal dated October 22, 2001, at 3.). That effect brings the Receiver's motion squarely within the Anti-Injunction Act and the federal-tax-exception to the Declaratory Judgment Act. As we noted in Falik,
 
 
 57
 [p]laintiff argues that an action to quiet title is not a suit for an injunction and, more particularly, not a suit "for the purpose of restraining the assessment or collection of any tax," which § 7421(a) alone forbids. Literally that is so .... But the action is quite similar to that contemplated by the Declaratory Judgment Act, 28 U.S.C. § 2201, to which Congress was quick to attach an exception "with respect to Federal taxes" — explaining that application of a declaratory judgment procedure in federal tax matters "would constitute a radical departure from the long-continued policy of Congress...." S.Rep. No. 1240, 74th Cong., 1st Sess. 11 (1935).
 
 
 58
 Falik, 343 F.2d at 42.
 
 
 59
 We reject the Receiver's contention that a "declaration by a court that the assets are held in constructive trust for CBL's customers does not `restrain' the IRS's ability to collect taxes, because the IRS never had the right to collect from those assets in the first place." (Receiver's supplemental brief on appeal dated October 22, 2001, at 12.) Were this correct, it would apply to any determination by a court that the IRS had no right to collect taxes from certain assets, essentially eviscerating the Anti-Injunction Act.
 
 
 60
 We conclude that the Anti-Injunction Act and the Declaratory Judgment Act are applicable here.
 
 B. Section 2410(a)
 
 61
 Section 2410, the quiet-title provision on which the district court relied, constitutes a limited waiver of sovereign immunity. It provides in part that "the United States may be named a party in any civil action or suit in any district court... to quiet title to ... real or personal property on which the United States has or claims a mortgage or other lien." 28 U.S.C. § 2410(a)(1). The Government argues that this provision is inapplicable here because the Government neither has nor claims a mortgage or other lien. The district court rejected this argument, ruling essentially that the Government's "contemplat[ion]" of some federal tax liability on the part of Bancorp, together with its reservation of "its rights to assert a tax lien," 138 F.Supp.2d at 525, and its position that any such debt on the part of Bancorp will have priority over the debts to Bancorp customers, constitutes a claim of a lien. We disagree with the district court's view.
 
 
 62
 A lien is a security interest in property. See, e.g., Restatement of Security Ch. 2, Scope Note (1941) ("The term `lien' is frequently used in the broad sense of a tie or hold which one person has for the purpose of security upon land, chattels or intangibles in which another has an interest.... Thus broadly understood `lien' may be considered as a general term embracing all sorts of security devices, legal or equitable."). It may be perfected or it may merely be claimed. A party may claim a lien and ultimately have its claim rejected on the ground that its lien was not perfected or was otherwise invalid. In the federal taxation context, a tax assessment would automatically result in a lien on the taxpayer's property, see 26 U.S.C. §§ 6321, 6322; but there has been no assessment here. Indeed, the Government points out that, the Receiver having filed no federal tax returns, it is unknown whether Bancorp even has any tax liability. Thus, the Government has no automatic lien, and it has not asserted a lien. It has merely stated that it may be entitled to a lien when the existence and extent, if any, of Bancorp's federal tax liability is clarified; and it has opposed a declaration that Bancorp's federal tax liabilities are subordinate to Bancorp's debts to customers. We cannot conclude that Congress intended that either a refusal by the United States to disavow any possibility that it may have a lien in the future after tax liability is determined, or a refusal to forgo the priority for debts to the United States that is established in the Federal Debt Priority statute, 31 U.S.C. § 3713, would constitute a "claim[]" of a lien such as to waive the government's sovereign immunity.
 
 
 63
 Further, in the absence of a lien, an action to foreclose the Government's right to assert a lien imperils the government's tax revenues in precisely the way the Anti-Injunction Act is meant to foreclose:
 
 
 64
 an action ... where the lien remains of record until and unless a court determines the underlying assessment to be invalid, is less dangerous to the revenue than one in which a taxpayer obtains an injunction against assessment or collection and is free to dispose of his property while the suit goes on.
 
 
 65
 Falik, 343 F.2d at 42. The more dangerous type of action is at issue here: The Receiver has obtained an order that would allow him to dispose of the estate's property prior to the Government's assessment or collection of the taxes due from the estate, perhaps making the eventual collection of whatever tax is due impossible.
 
 
 66
 We conclude that in the circumstances of this case, § 2410(a)(1) does not constitute a waiver of sovereign immunity that would avoid application of the Anti-Injunction Act and the Declaratory Judgment Act.
 
 
 67
 C. Jurisdiction Under South Carolina v. Regan
 
 
 68
 The district court alternatively premised its power to grant the Receiver's Priority Declaration Motion on the exception to the Anti-Injunction Act announced in South Carolina v. Regan. The Regan Court held that the Anti-Injunction Act does not apply when Congress has not "provided an alternative avenue for an aggrieved party to litigate its claims on its own behalf." 465 U.S. at 381, 104 S.Ct. 1107. The district court stated that the Receiver has two choices, to wit, "implement[ing] the partial distribution plan as presently structured, but at the risk of extraordinary personal liability," or "set[ting] aside reserves from the receivership funds to provide for the eventuality that this personal liability will come to pass, and to cover that liability." 138 F.Supp.2d at 528. The court found that these alternatives were untenable because "the effect of not affording the Receiver a way to have the personal liability issue determined at this stage would be to bring the receivership and any partial distribution under the receivership to a halt," which would "defeat the very purpose of the receivership." Id. We cannot conclude that these considerations meet the Regan standard, for the Receiver has alternative routes for obtaining a determination of his federal tax exposure without incurring personal liability for violating the Federal Debt Priority statute.
 
 
 69
 First, the Receiver, like any other taxpayer has the option of paying taxes immediately and seeking a refund thereafter. The "pay first, litigate later" procedure is not unusual. See Bull v. United States, 295 U.S. 247, 260, 55 S.Ct. 695, 79 L.Ed. 1421 (1935); Phillips v. Commissioner, 283 U.S. 589, 595-99, 51 S.Ct. 608, 75 L.Ed. 1289 (1931). In addition, the Government also points out that even without paying taxes, the Receiver has the means, prior to making a distribution, to obtain a determination of tax liability either through administrative procedures or through a judicial proceeding. For example, the Receiver could request an administrative determination of Bancorp's tax liability or of the tax consequences of the Plan by applying for a private letter ruling. See, e.g., 26 C.F.R. § 601.201. Or, upon filing the appropriate tax returns, the Receiver could request a prompt assessment of any corporate tax liability of Credit Bancorp. See 26 U.S.C. § 6501(d). As the Government concedes (see Government's reply brief at 10-11), if the Receiver were to obtain such an assessment, with its concomitant automatic lien, a suit would then lie under § 2410 to determine whether the receivership assets can be used to satisfy the tax liability. See, e.g., Hensley v. Harbin, 196 F.3d 613, 614 (6th Cir. 1999); Litton Industrial Automation Systems, Inc. v. Nationwide Power Corp., 106 F.3d 366, 368 (11th Cir.1997), cert. denied, 523 U.S. 1003, 118 S.Ct. 1185, 140 L.Ed.2d 316 (1998); Progressive Consumers Federal Credit Union v. United States, 79 F.3d 1228, 1230-34 (1st Cir.1996); Estate of Johnson, 836 F.2d 940, 943-45 (5th Cir. 1988). Or, because the Receiver is a fiduciary, he could obtain judicial review because he would be entitled to a notice of deficiency before any assessment is made, and to challenge any such notice in the Tax Court, see 26 U.S.C. §§ 6212(a), 6213(a).
 
 
 70
 Finally, as the district court noted, the Receiver could set up a reserve for taxes — a common step — and delay distribution of the reserved portion of the estate until Bancorp's tax liabilities are determined. Such reserves and delays are hardly novel. See generally 1 A. Dewing, Financial Policy of Corporations 622 (5th ed. 1953) ("Probably the most frequent of [contingency reserves] is that required for taxes."). Such a reserve by the Receiver would doubtless be approved by the court. See generally King v. United States, 379 U.S. 329, 338-39, 85 S.Ct. 427, 13 L.Ed.2d 315 (1964) (holding that bankruptcy estate's distributing agent had personal liability for distributing estate's assets without making adequate provision for payment of government's priority claim, and stating: "[I]f King had objected at the confirmation hearing to paying out the deposited funds to nonpriority creditors before the Government's claim was surely provided for, there can be little doubt that he would have obtained satisfaction. Even after confirmation it is most unlikely that such an objection would have been ignored. Had it been, responsibility for the frustration of the Government's claim would have devolved completely upon the court ...." (footnote omitted)).
 
 
 71
 In light of the procedures available to him, the Receiver has not shown that he has no means of securing a timely determination of whether and to what extent Bancorp has federal tax liability and whether the fraud victims' claims take priority over any tax liabilities, or of avoiding massive personal liability under the Federal Debt Priority statute, other than by obtaining a declaration against the Government pursuant to his Priority Declaration Motion. The district court's view that pursuit of any of these courses of action would defeat the purpose of the receivership is unpersuasive. The purpose will not be defeated by the delay endured by many individuals and entities during the interval in which potential tax issues are resolved. And to hold that there is a necessity-based exception to the Anti-Injunction Act here would be to allow the district court itself to effect a waiver of the United States' sovereign immunity simply by having created the receivership and having ordered immediate distribution.
 
 
 72
 In sum, we conclude that the Regan exception to the Anti-Injunction Act did not authorize the district court to grant the Receiver's Priority Declaration Motion.
 
 
 73
 D. Alternative Waivers Suggested by the Receiver
 
 
 74
 The Receiver urges that if we reject the grounds relied on by the district court for its ruling that sovereign immunity has been waived, we should apply the exception to the Anti-Injunction Act established in Williams Packing, or conclude that there was a waiver of such immunity in the Administrative Procedure Act or in the Government's acts of intervening in this action in the spring of 2000 or negotiating thereafter. We find none of these contentions persuasive.
 
 
 75
 The Williams Packing exception applies when the requested relief is required in order to avoid irreparable injury and "it is clear that under no circumstances could the Government ultimately prevail." 370 U.S. at 6-7, 82 S.Ct. 1125; see also Bob Jones University v. Simon, 416 U.S. 725, 737, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974). We cannot see that either prong of this test is met.
 
 
 76
 The Receiver has the burden of "plead[ing] and prov[ing] facts" that establish irreparable injury, see Commissioner v. Shapiro, 424 U.S. 614, 629, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976), and his simple assertions on this appeal that postponing the distribution plan would result "in irreparable injury to the customers because they are deprived of the right to vote or dispose of their shares ... [and they] are left exposed to injury due to market risk" (Receiver's brief at 37), does not carry that burden. The district court has already shown its willingness to make accommodations designed to alleviate injury that might arise from CBL customers' inability to control their own shares, see SEC v. Credit Bancorp, Ltd., 124 F.Supp.2d 824, 826 (S.D.N.Y.2000), and the Receiver has offered no proof of irreparable injury.
 
 
 77
 More importantly, it cannot be said that the Government clearly could not ultimately prevail. The Receiver has not even filed any tax returns from which one could determine whether the Government will be owed taxes, and the Receiver himself postulates massive tax liability. The Williams Packing exception to the jurisdictional bar simply has no application here.
 
 
 78
 Nor are we persuaded that the necessary waiver can be found in the Administrative Procedure Act, 5 U.S.C. § 702. That section applies only when there has been an "agency action" within the meaning of 5 U.S.C. § 551(13), see Lujan v. National Wildlife Federation, 497 U.S. 871, 882, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Here, the Receiver does not complain of any action or inaction on the part of any governmental agency. Accordingly, his Priority Declaration Motion does not trigger the § 702 waiver of sovereign immunity.
 
 
 79
 Finally, we cannot agree that the Government's conduct with regard to the present action constituted a waiver of sovereign immunity. Its intervention in pursuit of a stay of discovery solely in order to protect an ongoing criminal investigation was a narrowly focused request and not a waiver with respect to the civil tax liability of Bancorp or the Receiver. As discussed above, the United States is amenable to suit only to the extent it has consented to be sued, and waivers of sovereign immunity are to be narrowly construed. Indeed, our cases generally note that a Congressional enactment is required for a waiver of sovereign immunity and that
 
 
 80
 "no contracting officer or other official is empowered to consent to suit against the United States." ... Therefore, to the extent that [a] [s]ettlement [a]greement purports to waive sovereign immunity, whoever acceded to the [s]ettlement [a]greement on behalf of the Government ... was acting beyond the scope of his or her authority.
 
 
 81
 Presidential Gardens Associates v. U.S. ex rel. Secretary of Housing and Urban Development, 175 F.3d 132, 140 (2d Cir.1999) (quoting United States v. Mitchell, 463 U.S. 206, 215-16, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)).
 
 
 82
 The Government's Stipulation with the Receiver in this case with respect to the proposed partial interim distribution cannot be viewed as constituting a waiver. In the Stipulation, in which the Government agreed not to assert a lien on certain receivership assets and not to assert § 3713(b) liability against the Receiver with respect to the period preceding his appointment, the parties agreed that "[n]othing" in the Stipulation was to "waive any of the Government's defenses, including but not limited to sovereign immunity." (Stipulation ¶ 9.)
 
 CONCLUSION
 
 83
 We have considered all of the Receiver's arguments on this appeal and have found them to be without merit. The May 2001 Order of the district court is reversed to the extent that it found a waiver of sovereign immunity with respect to the tax liabilities of Bancorp and the Receiver, declared that Bancorp's debts to its customers take priority over its debts to the United States, and ruled that the Receiver will have no personal liability under 31 U.S.C. § 3713 if he distributes assets of the estate as contemplated by the Plan.
 
 
 84
 We note that, in the absence of consent by the Government, the Receiver was not ordered to implement the Plan unless the district court entered an order granting his Priority Declaration Motion. See January 2001 Order ¶ U. The order granting that Motion is now being vacated, and the Receiver is thus under no obligation to proceed with a distribution in a way that exposes him to personal liability for Bancorp's taxes. The matter is remanded for dismissal of the Receiver's Priority Declaration Motion, without prejudice to renewal at such time as the Government has made an assessment or otherwise asserted or claimed a lien on the assets of Bancorp or the receivership.